ORDERED in the Southern District of Florida on 02/13/08



Raymond B. Ray, Judge
United States Bankruptcy Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

LEVITT AND SONS, LLC,
a Florida limited liability company, et al.

Debtors.

_____/

Chapter 11 Cases

Case No. 07-19845-BKC-RBR

Jointly Administered

## MEMORANDUM OPINION APPROVING WACHOVIA DEBTORS' DIP FINANCING MOTION [D.E. 692]

This matter is before the Court on January 23 & 24, 2008, upon the following motions. The first is the motion filed by Levitt and Sons of Horry County, LLC ("Horry"), Levitt and Sons of Hall County, LLC ("Hall"), Levitt and Sons of Cherokee County, LLC ("Cherokee"), Levitt and Sons of Paulding County, LLC ("Paulding"), Levitt and Sons at World Golf Village, LLC ("World Golf"), and Levitt and Sons of Manatee County, LLC ("Manatee," and collectively with Horry, Hall, Cherokee, Paulding, and World Golf, the "Wachovia Debtors" or "Borrower") for the entry of an interim order and a final order pursuant to §§ 105, 361, 362, 363, and 364 of 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal

1637615 v4

Rules of Bankruptcy Procedure, (i) authorizing Borrower to obtain secured post-petition financing from Wachovia Bank, National Association, a national banking association ("Wachovia" or the "DIP Lender"), on a superpriority secured and priming basis; (ii) modifying the automatic stay pursuant to Section 362 of the Bankruptcy Code; (iii) approving home sales in the ordinary course of business with liens to attach to sale proceeds; (iv) approving Soneet R. Kapila as Chief Administrator of Borrower; (v) granting interim relief; and (vi) scheduling a final hearing under Fed. R. Bankr. P.4001(b) and (c) [D.E. 692] (the "DIP Financing Motion"). The second is the motion of the Debtors to abandon the collateral securing the pre-petition indebtedness of the Wachovia Debtors to Wachovia [D.E. 80] (the "Abandonment Motion). The third is Wachovia's motion for relief from stay [D.E. 242] (the "Relief from Stay Motion").

The following objections have been filed with respect to the relief requested in the DIP Financing Motion: (1) *Objection filed by John L. Snyder, President of Seasons on Lake Lanier Community Association, Inc.* [D.E. 855]; (2) *Objection filed by Ferguson Enterprises, Inc.* [D.E. 899]; (3) *Motion to Continue Hearing filed by Jacqueline and Joseph D'Alessandro* [D.E. 941]; (4) *Objection of Ferguson Enterprises, Inc. to Debtor's Motion for Order Authorizing Certain Debtors to Obtain Secured Post-Petition Financing on Superpriority Secured and Priming Status* [D.E. 909]; (5) *Objection filed by Phillips and Jordan, Inc.* [D.E. 910]; (6) *Objection of Concrete Control Incorporated d/b/a C.C.I. Site Development to Motion of the Debtors to Obtain Secured Postpetition Financing From Wachovia Bank That Would Extinguish Its Claim of Lien* [D.E. 922]; (7) *Limited Objection by Cascades at World Golf Village Homeowners Association to the Interim Order Authorizing Debtor's Post-Petition Financing through Wachovia Bank* [D.E. 913]; (8) *Objection filed by C & C Ripoll Masonry* [D.E. 914]; (9) *Objection filed by American Woodmark* [D.E 915]; (10) *Objection of BEMCI Electric, Inc., Construction Management Plus,*

*Inc., Fogleman Builders Supply, and Millennium Electrical Services, Inc. to Debtor's Motion to*

*Obtain Secured Postpetition Financing on Superpriority and Priming Status* [D.E. 964]; and (11)

*Objection filed by J.B. Stevens Construction Co., Inc.* [D.E. 978] (collectively, the "Objections").

The following objections have been filed with respect to the Abandonment Motion: (1)

*Objection filed by Wachovia Bank, N.A.* [D.E 139]; (2) *Limited Objection filed by The Ad Hoc*

*Group of Residents of Seasons at Laurel Canyon* [D.E. 155]; (3) *Limited Objection filed by*

*Cascades at Sarasota Transition Committee* [D.E. 202]; (4) *Response of American Woodmark*

*Corporation to: (A) Motion for Relief From Automatic Stay Filed by Wachovia Bank, National*

*Association; and (B) The Debtor's Motion for Authority to Abandon Property of the Estate*

*Subject to Liens Held by Wachovia Bank, N.A.* [D.E 359]; and (5) *Limited Objection filed by the*

*Joint Committee of Unsecured Creditors* [D.E. 454].

The following objections have been filed with respect to the Stay Relief  Motion: (1)

*Response of American Woodmark Corporation to: (A) Motion for Relief From Automatic Stay*

*Filed by Wachovia Bank, National Association; and (B) The Debtor's Motion for Authority to*

*Abandon Property of the Estate Subject to Liens Held by Wachovia Bank, N.A.* [D.E.359]; and

(2) *Limited Objection of the Joint Committee of Unsecured Creditors* [D.E. 455].

On January 9, 2008 at 9:30 a.m. in Ft. Lauderdale, Florida, this Court conducted a

preliminary hearing (the "Interim Hearing") on the DIP Financing Motion, and entered an

interim order (the "Interim Order") [D.E 836] approving the financing requested in the DIP

Financing Motion, pending a final hearing on the DIP Financing Motion.  This Court convened a

final evidentiary hearing on the DIP Financing Motion, the Abandonment Motion, and the Relief

from Stay Motion commencing January 23, 2008 at 9:30 a.m. and concluding on January 24,

2008, in Ft. Lauderdale, Florida (the "Final Hearing").  After due deliberation and sufficient

cause appearing therefore and for the reasons stated by the Court herein and on the record at the Hearing, the Court hereby makes the following findings of fact and conclusions of law applicable to the three pending motions (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and vice versa).

## FINDINGS OF FACT

1. Background Facts:

On November 9, 2007 (the "Petition Date"), Levitt and Sons, LLC ("LAS") and thirty-seven of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their assets as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. On November 27, 2007, the U.S. Trustee appointed the Joint Committee of Creditors Holding Unsecured Claims (the "Committee") [D.E. 208] in the above-captioned bankruptcy case. On January 22, 2008, the U.S. Trustee appointed the Joint Home Purchase Deposit Creditors Committee of Creditors Holding Unsecured Claims [D.E 936].

The Debtors are engaged in the business of designing, developing, building, and selling single family homes in master planned residential communities throughout the Southeast. Typically, the Debtors funded each development by granting a blanket lien on a development to the bank that provided the financing for that development. Generally, each development was owned by a single purpose legal entity that existed solely for the purpose of owning and developing the residential community.

As of the Petition Date, Wachovia was the primary source of financing for seven of the Debtors' projects (the "Wachovia Projects") known as (i) "Seasons at Laurel Canyon" in Cherokee County, Georgia (Project Owner: Cherokee); (ii) "Seasons at Lake Lanier" in Hall County, Georgia (Project Owner: Hall); (iii) "Seasons at Seven Hills" in Paulding County,

Georgia (Project Owner: Paulding); (iv) "Seasons at Prince Creek" in Horry County, South Carolina (Project Owner: Horry); (v) "Rio Mar Sarasota" in Manatee County, Florida (Project Owner: Manatee); (iv) "Cascades at Sarasota" in Manatee County, Florida (Project Owner: Manatee); and (vii) "Cascades at World Golf Village" in St. Johns County, Florida (Project Owner: World Golf).

These seven Wachovia Projects were funded in three loans (the "Pre-Petition Debt"). Seasons at Prince Creek, Seasons at Laurel Canyon, Seasons at Lake Lanier, and Seasons at Seven Hills cross secured one credit facility with a Petition Date loan balance of approximately One Hundred Three Million Dollars ($103,000,000.00). Cascades at World Golf Village secured a separate loan facility with a Petition Date balance of approximately Nine and a Half Million Dollars ($9,500,000.00). Rio Mar Sarasota and Cascades at Sarasota cross secured a third credit facility also having a Petition Date loan balance of approximately Nine and a Half Million Dollars ($9,500,000.00).

The evidence presented at the Final Hearing established that the Pre-Petition Debt owed by the Wachovia Debtors to Wachovia is secured by liens, mortgages, and security interests in the assets comprising the Wachovia Projects that are valid, binding, perfected, enforceable, and unavoidable.

Each of the Wachovia Projects (except Seasons at Seven Hills) have common areas that are partially built, some houses that are occupied, some houses that are under contract and on which construction stopped for lack of funding, some lots that are under contract and for which construction has not yet begun, unsold lots, complete and partially complete amenities, model and spec houses and land that is platted but on which even the horizontal infrastructure has not yet been built. There are home purchasers who want to cancel their purchase contracts, and there

are home purchasers who want their contracted houses completed and their purchase contracts closed so that they can occupy their houses. Seasons at Seven Hills is similar, except that no houses have been built, and no houses are under construction.

The Debtors have certain projects in similar stages of development that were financed by Key Bank and Bank of America. There was no post-petition funding available for these projects, and the Debtors had no equity in these projects. As a result the Debtors abandoned the projects (except for the Bonita Springs project with Key Bank). In addition, Key Bank and Bank of America were given relief from stay to proceed with non-bankruptcy foreclosure actions.

The evidence was undisputed that unless the Wachovia Debtors were able to find a substantial infusion of cash to fund the Wachovia Projects, these Wachovia Projects would likewise be abandoned by the Wachovia Debtors. Indeed, the Wachovia Debtors filed the Abandonment Motion [D.E. 80], and Wachovia filed the Relief from Stay Motion in order to exercise its legal remedies, including foreclosure, as to the Wachovia Projects [D.E. 242]. An immediate and ongoing need exists for the Wachovia Debtors to obtain financing to continue the operation of the Wachovia Projects as debtors-in-possession under Chapter 11 of the Bankruptcy Code and to minimize the disruption as a "going concern."

Despite diligent efforts, the Wachovia Debtors were unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code and were unable to obtain financing in the form of credit secured by liens that are junior to existing liens on property of the estate pursuant to Section 364(c)(2) and (c)(3) of the Bankruptcy Code (except as proposed in the DIP Financing Motion before the Court).

After lengthy and arms length negotiations among the Wachovia Debtors, the Committee and Wachovia, Wachovia agreed to provide financing to the Wachovia Debtors on certain terms and conditions in order to fund the Borrower's continued construction and related activities of the Wachovia Projects (the "DIP Financing"). The Wachovia Debtors, the Committee and Wachovia were represented in the negotiations by experienced, knowledgeable, bankruptcy professionals.

A term sheet containing a detailed explanation of all of the material terms of the proposed DIP Financing was announced at a hearing on December 19, 2007, and was filed with the Court that same day [D.E. 481]. The motion to approve the DIP Financing and for related relief was filed with the Court on January 4, 2008, which DIP Financing Motion contained all of the terms of the proposed DIP Financing.

2. Notice:

In accordance with Bankruptcy Rule 4001, the Court set a hearing for interim approval of the DIP Financing for January 9, 2008. Notice of this hearing [D.E.703] was generated by the clerks office and sent out electronically.

A notice package (Notice Package #1) containing an unofficial notice of hearing, the DIP Financing Motion, and the entire proposed Debtor-In-Possession Credit and Security Agreement (the "DIP Loan Agreement") was also served by counsel for Wachovia on all putative junior lien creditors (the "JLC") in any of the Wachovia Projects by Federal Express for delivery on the morning of Monday, January 7, 2008. [D.E. 716]. The official Notice of hearing [D.E. 703] was generated the same day, January 8, 2008, as the docketing of the certificate of service of Notice Package #1. [D.E 716].

The Court heard argument and approved a limited amount of DIP Financing at the hearing on January 9, 2008, with the Interim Order being entered on January 14, 2008 [D.E.

836]. The Interim Order set a final hearing on the DIP Financing Motion for January 23, 2008,

which date had been announced at the January 9th hearing.

Counsel for Wachovia again served a notice package (Notice Package #2) by Federal

Express on the JLC, which notice was filed Tuesday, January 15, 2008 [D.E. 860], and sent out

to be received the morning of January 16, 2008. The notice package contained a notice (the

"Notice"), the actual Interim Order, the interim order authorizing the retention of Soneet Kapila

[D.E. 786] and a proposed final order. The caption of the Notice provided:

> **TO ALL PARTIES IN INTEREST:**
>
> **PARTICULARLY INCLUDING ANY AND ALL PARTIES ASSERTING A LIEN, CLAIM, INTEREST, ENCUMBRANCE OR DEMAND ON ANY ASSET IN A LEVITT PROJECT FINANCED BY WACHOVIA.**

The body of the notice provided in pertinent part:

> **PRESERVATION OF SENIOR LIENS PROVIDED PROCEDURES ARE FOLLOWED**
>
> The proposed Ordinary Course Sale Orders will preserve all liens, claims, interests, encumbrances or demands (collectively, "Liens") in the same manner and with the same priority as existed with respect to such property provided that the party asserting the Lien upon the property shall have filed, within thirty (30) days after the date of entry of the Ordinary Course Sale Order, a motion with the Court seeking an adjudication that its Lien is senior and prior in right of payment to the Liens of Wachovia. If the proposed Ordinary Course Sale Orders are entered, any Lien senior and prior in right of payment to the Liens of Wachovia will be lost unless a timely motion is filed.
>
> **EXTINGUISHMENT OF JUNIOR LIENS**
>
> If the proposed Ordinary Course Sale Orders are entered, all Lien claims of a junior and subordinate priority to the Liens of Wachovia shall be extinguished. Any holder of a Lien so extinguished shall be entitled to treatment as a general unsecured creditor of Borrower and further entitled to share in the Guaranteed Amount payable to the Borrower's estates pursuant to the terms of

the Debtor-in-Possession Credit and Security Agreement approved
by the Interim DIP Order.

*See* D.E.. 860 (emphasis in original).

The notice was effective and caused numerous putative junior lienholders to file objections to the DIP Financing Motion. Of the eleven Objections to the DIP Financing Motion, eight were filed by junior lien claimants.

The Court finds that the notice provided for the DIP Financing Motion and the Final Hearing was as practical as possible under the circumstances and was appropriate, adequate and sufficient pursuant to 11 U.S.C. §§ 102(1), 364 and 506(a) and Fed. R. Bankr. P. 2002, 3012 and 4001(b) and (c).

3. Terms of the DIP Financing and Treatment of Junior Lien Holders:

Under the DIP Financing's general framework, Wachovia agrees to lend to the Wachovia Debtors, jointly and severally, a revolving credit facility of Three and a Half Million Dollars ($3,500,000.00) that may be increased to as much as Ten Million Dollars ($10,000,000.00) in order to further construct and sell partially built homes and amenities in the Wachovia Projects, perhaps to start construction on other houses and projects, to sell houses in the ordinary course, and to sell each of the Wachovia Projects as a going concern in subsequent sales that would be subject to Court approval. Loan proceeds will also cover various overhead costs. The DIP Loan Agreement provides for appointment of a Chief Administrator (in the person of Soneet Kapila) to administer the Wachovia Projects.

The DIP Financing is to be secured by a lien in favor of Wachovia on all of the assets of the Wachovia Debtors, which assets also secure the pre-petition indebtedness of the Wachovia Debtors to Wachovia; however, Wachovia does not have and is not being granted a lien on the Excluded Assets (as defined in the DIP Loan Agreement).

The lien granted to Wachovia in conjunction with the DIP Financing is junior to any lien that has seniority over Wachovia's pre-petition lien and superior to any other lien. The proposed DIP Financing also includes a release of all of the Debtors' claims against Wachovia (but not a release of any claims that would be held by creditors in their individual capacities).

In addition to providing financing, the DIP Loan Agreement provides that the net proceeds from the sale of the assets comprising the Wachovia Projects will be disbursed according to a descending priority of payment obligations (the so-called payment "Waterfall") whereby the Debtors will receive a share of the sales proceeds. Three Million Dollars ($3,000,000.00) of that Waterfall is guaranteed to be paid to the Committee on behalf of the Debtors' estates, with the possibility of an upside depending upon the amount of sales proceeds realized from the sales of the assets that comprise the Wachovia Projects.

It was expressly not decided whether this carve out would benefit only the estates of the Wachovia Debtors or all of the Debtors. This issue is left for resolution at future proceedings of the Debtors' case, presumably as a part of the confirmation process. In addition, Wachovia guarantees the payment of another One Million Dollars ($1,000,000.00) to the Debtors to fund administrative expenses. Finally, Wachovia releases the Debtors from any claim it may have to the approximate Six Million Dollars ($6,000,000.00) in cash that the Debtors had on hand as of the Petition Date (which claim is still asserted by other banks in this case).

All of the Debtors' obligations under the DIP Financing, including all loans thereunder, shall be deemed to have extended by Wachovia as the DIP Lender in good faith, as that term is used at 11 U.S.C. § 364(e), and in express reliance upon the protections offered by that statute, and Wachovia shall be entitled to the full protection of 11 U.S.C. § 364(e) in the event that the

order approving the DIP Financing or any provision thereof is vacated, reversed or modified on appeal or otherwise.

4. Testimony of Mr. Young:

The Debtors' called their Chief Restructuring Officer, Lawrence E. Young, to testify. Young is a graduate of the Wharton School of the University of Pennsylvania, a bankruptcy professional, and very experienced in directing the restructuring and liquidation of financially distressed corporations.

Young testified about the significantly distressed markets for assets of the type at issue here, which markets continue to decline. Young testified that the value of each of the sets of assets securing each of the three Wachovia credit facilities was less than the amount owed to Wachovia on each of the three credit facilities, noting that the amount owed versus the value of the collateral differed materially.

Young further testified that the property values contained in the Debtors' schedules, which might otherwise suggest the existence of equity in the same assets, are based upon the net book values recorded by the Debtors and, thus, are not reflective of the true fair market value of the property.

Indeed, Young testified that other assets of this type in this case were being sold for forty percent to fifty percent of net book value. Net book value on the property securing the larger of the three loans was One Hundred Thirty Million Dollars, and the indebtedness owed to Wachovia was about One Hundred Three Million Dollars. Thus, the value of these assets are at best Sixty Five Million Dollars, tens of millions less than the amount owed to Wachovia.

Young was consistent despite extended cross examination by several of the objectors. He steadfastly maintained that the value of the assets securing each Wachovia loan was substantially

less than the amount owed to Wachovia in connection therewith. His testimony was entirely congruent with the "global notes" found in the schedules for each Debtor entity. The global notes clearly indicate that the Debtors' assets are shown on the basis of their net book value and that amounts ultimately realized or realizable on account of such assets may vary from net book value and that such variance may be material.

The Court finds Young's testimony credible and convincing. Based on his credible testimony, the Court announced at the hearing that it found as a matter of fact that the value of the assets securing each of Wachovia's credit facilities was less than the amount owed to Wachovia on each of the respective loans. As a result, it is a factual reality that there is no equity in any of the Wachovia Projects to secure any putative liens of any junior lien holder on any of the Wachovia Projects.

### 5. Ability to Adequately Protect Wachovia's Interest:

The evidence is likewise undisputed that the Wachovia Debtors have no ability to provide adequate protection to Wachovia. Debtor's Counsel admitted in open Court that if the DIP Financing is not approved, there are no grounds to deny the relief requested in Wachovia's Relief from Stay Motion. This position was confirmed by Mr. Young during his testimony.

Coupling the inability to provide Wachovia with adequate protection with the fact that there is no value in the Wachovia Projects over and above the pre-petition indebtedness of Wachovia, the only way for the Debtors' estates to realize any value from the collateral is to approve the DIP Financing . If the DIP Financing is approved, the Debtors' estates will receive a minimum of $4,000,000.00 in guaranteed payments; there is the likelihood that homes will be completed and sold, reducing claims against the Wachovia Debtors' estates; and the Debtors' estates may receive additional funds to the extent the infusion of capital from the DIP Financing

generates higher sales prices for the Wachovia Debtors' properties. If the DIP Financing is not approved Wachovia will foreclose on its collateral and as a conclusive matter of fact all junior lien holders will receive nothing because of the gross discrepancy between the current value of the collateral and the size of the Wachoiva pre-petition loan.

The obvious result of these findings is that junior lien creditors' liens have no value because there is no value in the collateral beyond the Pre-Petition Debt owed to Wachovia on such collateral. Thus, the junior lien claimants are not entitled to adequate protection pursuant to 11 U.S.C. § 364(d) because at best they have a zero value lien.

6. Testimony of Counsel for the Unsecured Creditors Committee:

The Debtors also called the Committee's attorney, Paul J. Battista, to testify regarding the due diligence performed by the Committee. He stated that the proposed DIP Financing and in particular the release of claims being provided to Wachovia was in the best interest of the Debtors and their estates. The Court finds Mr. Battista's testimony to credible.

7. Objections to the Proposed DIP Financing:

The United States Trustee supported the proposed DIP Financing after making sure certain procedural and administrative requirements would be met.   No person in the status of a senior lien holder objected to the DIP Financing.   No person in the status of an unsecured creditor objected to the DIP Financing. The following are the only objections that were timely lodged.

The objections to the proposed DIP Financing primarily attack the provisions that eliminate the liens of all junior lien holders in the Wachovia Projects. It is important to reiterate that it is this Court's understanding that any lien holder who holds a valid pre-petition lien senior to Wachovia would not be affected by the DIP Financing.  Essentially, by operation of the DIP

Financing each eliminated junior lien claimant becomes an unsecured creditor for the same amount of its indebtedness.

The affected parties have lodged objections that fall into five categories: (1) lack of adequate notice prior to a §506(a) valuation hearing; (2) Mr. Young was not competent to testify as to the value of the property; (3) the proposed DIP financing improperly extinguishes state law rights of the junior lien holders;(4) the DIP Financing Agreement is not a loan; and (5) the §363 sale provisions of the DIP Financing Agreement are contrary to law.

## CONCLUSIONS OF LAW

**I.      Jursidiction**

This Court has jurisdiction of the matters raised in the DIP Financing Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the DIP Financing Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).

If the Court is to approve the DIP Financing , the DIP Financing  must meet the requirements as set out by 11 U.S.C. §364. Further each one of the objections must also be addressed.

**II.     Section §364 Requirements**

Pursuant to 11 U.S.C. § 364, if a debtor is unable to obtain unsecured credit allowable as an administrative expense under § 503(b)(1) of the Bankruptcy Code, then the Court, after notice and a hearing, may authorize the debtor to obtain credit or incur debt:

(a)      with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(b)      secured by a lien on property of the estate that is not otherwise subject to a lien; or

(c)      secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

In the event the debtor is unable to obtain credit under the provisions of § 364(c) of the Bankruptcy Code, the debtor may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien, commonly called a "priming lien." 11 U.S.C. § 364(d). *See In re Devlin*, 185 B.R. 376, 377 (Bankr. M.D. Fla. 1995)(stating "Section 364(d)(1) permits the Court to authorize financing secured by a senior lien on any property of the estate if the Debtor is unable to obtain such credit otherwise"). Such relief may be granted so long as (1) the debtor is unable to obtain financing in any other permissible manner and (2) there is adequate protection of the interests of the holder of the lien on the property on which the senior lien is proposed to be granted. 11 U.S.C. 364(d)(1).

1. Inability to Obtain Other Financing

It is undisputed that The Wachovia Debtors have been unable to procure the required funds in the form of unsecured credit or unsecured debt with an administrative priority. As a last resort The Wachovia Debtors, in collaboration with the Committee, heavily negotiated the proposed post-petition financing at arm's-length and pursuant to the Wachovia Debtors' business judgment. The terms and provisions of the DIP Financing Agreement are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Wachovia Debtors could obtain post-petition financing.

Accordingly, the Court finds that the Debtor Estates are unable to secure financing in any other permissible form, except for the current Wachovia DIP Financing package. As such the first prong of 11 U.S.C. §364(d) is met.

2. Adequate Protection

The second requirement under 11 U.S.C. §364(d), is that the lien holders be granted adequate protection. 11 U.S.C. §364(d)(1)(B). The burden of proof rests upon the Debtor. 11 U.S.C. §364(d)(2).

Section 364 states in relevant part:

> The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if--
>
> (A) the trustee [or debtor in possession] is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

Pursuant to the second prong the issue is what amount of adequate protection, if any, are the junior lien holders entitled to receive.  The Bankruptcy Code states that adequate protection may be provided by a cash payment or periodic cash payments to the secured creditor, the grant of an additional or replacement lien, or such other relief "as will result in the realization by such entity of the indubitable equivalent of such entity's interest."  11 U.S.C. § 361.

Many Courts have noted that this definition of adequate protection " confers upon the parties and the courts flexibility by allowing such other relief as will result in the realization by the protected entity of the value of its interest in the property involved." *In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 631 (S.D. N.Y. 1992). As noted by the Third Circuit Court of Appeals:

> Whether protection is adequate 'depends directly on how effectively it compensates the secured creditor for loss of value' caused by the superpriority given the post-petition loan. (citation omitted).  In other words, **the proposal should provide the pre-petition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing.**

*In re Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994) (emphasis added).

Recently in *In re Stoney Creek Techs., LLC*, 364 B.R. 882 (Bankr. E.D. Pa. 2007) the Court denied a motion to approve financing under 11 U.S.C. §364(d)(1) because the interests of the secured creditor were not adequately protected. The test of sufficiency of adequate protection was summarized as the "prepetition creditor must be provided with the same level of protection it would have had absent the post-petition financing since it is entitled to retain the benefit of its prebankruptcy bargain." *In re Stoney Creek Techs.*, LLC, 364 B.R. 882, 890 (Bankr. E.D. Pa. 2007).

In *Stoney Creek* the reason for the denial was that the debtor could not operate profitably, would default on its obligations to Lender and the secured creditor would be impaired by its second lien position from realizing the value of its collateral. *Id.* at 892. The *Stoney Creek* Court further noted that the "DIP Loan is a stopgap measure that will not restore Debtor to economic health before it becomes due, if at all." *Id.* The key fundamental difference between *Stoney Creek* and the instant case is that in *Stoney Creek* there was equity over and above the value of the liens. *Stoney Creek* 364 B.R. at 893. Therefore the granting of the financing in *Stoney Creek* could have caused a real and material change in the amount of collateral available to the secured creditor. In this case, the Court has found as a matter of law that Wachovia, the first lien holder, is grossly undersecured and that any junior lien holders would be entirely foreclosed upon in a non-bankruptcy proceeding.

Since, the junior lien holders would receive nothing had there not been post-petition superpriority financing, they are not entitled to adequate protection. Notably, in the instant case, junior lien holders will be afforded the opportunity to participate in, and receive a distribution

from, a $3,000,000 guaranteed payment for the benefit of unsecured creditors,[1] who would get nothing absent approval of the DIP Financing. If there are secured claimants which had priority over Wachovia's security interests as of the Petition Date, they are not primed by the DIP Financing; therefore, there is no requirement that adequate protection be provided to such priority claimants.

Accordingly, the Court finds as a matter of law that the junior lien holders are not entitled to adequate protection because they would receive nothing under non–bankruptcy law. As such, the Debtors have met their burden pursuant to 11 U.S.C. §364. The Court will now address the objections.

## III.    OBJECTIONS

There were Eleven objections in total filed against the DIP Financing. Two objections were filed by groups of homeowners in the Wachovia Projects (although far more homeowners appeared in support of the proposed DIP Financing). [D.E.855 and 913]. These will both be denied by separate order. One objection requesting a continuance was filed by contract holders who previously sought to reject their purchase contracts. [D.E. 941] This objection was denied in open court and a separate order shall be entered by the Court. Thus there are eight remaining objections that must be dealt with. [D.E.899, 909, 910, 914, 915, 922, 964, 978]. These objections come in five basic categories: (1) lack of adequate notice prior to a §506(a) valuation hearing; (2) Mr. Young was not competent to testify as to the value of the property; (3) the proposed DIP financing improperly extinguishes state law rights of the junior lien holders;(4) the

---

[1] An additional $1,000,000.00 shall be funded by DIP Lender in payment of the Debtors' administrative expenses. If administrative expense claims total less than $1,000,000.00 the remainder of the funds will also go to general unsecured creditors.

DIP Financing Agreement is not a loan; and (5) the §363 sale provisions of the DIP Financing Agreement are contrary to law.

    1. Lack of Notice for an 11 U.S.C. §506(a) Hearing:

    In the instant case, the terms of the DIP Financing Agreement provide for sales of the Wachovia Debtors' assets free and clear of all liens, claims and interests.  Under the DIP Financing Agreement, creditors with liens senior to the liens of Wachovia, who have established the priority of their liens in accordance with procedures established by this Court, will be entitled to be paid from sale proceeds in accordance with their priority.  Junior liens, on the other hand, are to be extinguished, and those claiming junior liens will be entitled to participate in the distribution of sale proceeds as general unsecured creditors.

    Based on this the junior lien holders argue that the hearing held was really a §506 valuation hearing and such they were entitled to proper notice pursuant to Bankruptcy Rule 3012.

    Section 506(a)(1) of the Bankruptcy Code provides that:

> [a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest...is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...and is an unsecured claim to the extent that the value of such creditor's interest...is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.  11 U.S.C. § 506(a)(1).

    Bankruptcy Rule 3012 provides "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct." Pursuant to the Eleventh Circuit "Rule 3012 requires that specific notice be given that

the bankruptcy court will determine the extent to which the claim is secured." *In re Calvert*, 907 F.2d 1069, 1072 (11th Cir. 1990). A claim can be deemed to be completely unsecured and the lien voided via a section 506(a)(1) determination of a creditor's secured status. *See, e.g., In re Millspaugh*, 302 B.R. 90, 98 (Bankr. D. Idaho 2003).

While Bankruptcy Rule 7001(2) provides that a "proceeding to determine the validity, priority, or extent of a lien" must be made via an adversary proceeding, pursuant to Bankruptcy Rule 3012, a section 506(a) determination can be made via a motion. *Millspaugh*, 302 B.R. at 98 ("...the Court concludes the attempt to strip off wholly unsecured liens may occur through a Rule 3012 valuation motion and does not require an adversary proceeding."); *In re Kleibrink*, 2007 WL 2438359 (N.D. Tex. Aug. 28, 2007) ("The Court agrees with the bankruptcy court's analysis that a motion is sufficient to strip a lien where the lien stripping occurs as a result of a [section] 506(a) valuation and an adversary proceeding is required where a debtor seeks to extinguish a lien by its validity, priority or extent.").

Furthermore, the valuation hearing may be conducted in connection with a hearing on the approval of debtor in possession financing. 11 U.S.C. 506(a)(1)("Such value shall be determined … in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."); *In re Timbers of Inwood Forest Associates, Ltd.,* 808 F.2d 363, 380 (5th Cir. 1987), aff'd *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (U.S.Tex. Jan 20, 1988) ("Under § 506(a), a secured creditor's claim may be valued at different times during the bankruptcy for different purposes under the Code [e.g., § 502 allowance of claim, § 364 borrowing, §§ 362 or 363 adequate protection, § 1129(b) cram-down]."); *In re Pensignorkay, Inc.*, 204 B.R. 676, 682 (Bankr. E.D. Pa. 1997)("[I]ssues concerning the valuation of property securing claims against the debtors are oft times implicated

even at the earliest stages of a bankruptcy case....Other examples of Code provisions that could implicate property valuation issues early in a bankruptcy case include, but are not limited to...Code [section] 364(requests to obtain credit).").

For the purposes of determining a creditor's secured status, value is to be determined at the time the Chapter 11 petition is filed. *In re Flagler-At-First Associates, Ltd.*, 101 B.R. 372, 376-77 (Bankr. S.D. Fla. 1989). The Court has already concluded based on the evidence that there is no equity in the Wachovia Projects over and above the pre-petition liens of Wachovia. Accordingly, the junior interests in the Wachovia Projects are completely unsecured as of the Petition Date.

Having laid out the above basis, the objection based on notice falls away. It is permissible for the Court consider the valuation of the secured property by motion. It is also equally permissible for the Court to conduct this valuation "in conjunction with any hearing" involving the "disposition or use" of the property. 11 U.S.C. §506(a)(1). The DIP Financing hearings certainly qualify as hearings that deal with the disposition or use of the property.

The sole assertion remaining relating to notice is that the junior lien holders were entitled to "specific notice" that there would be a valuation of their claims. [D.E.1073 at 3]. To support this proposition they cite to *In re Sernaque*, 311 B.R. 632, 636-37 (S.D. Fla. 2004). In *Sernaque* Judge Mark ruled that checking a box on the approved local form for a chapter 13 plan, which was subsequently served on the affected creditor was sufficient to meet the notice requirements. The Court agrees with the junior lien holders that they were entitled to specific notice. However, they received such notice.

The junior lien holders received notice of the intent to value their liens at zero in the following instances. First, the Motion [D.E. 692] at paragraph 37, states "Because the assets of

the Wachovia Debtors are fully encumbered, there is no value to junior lien holders or the Wachovia Debtors' bankruptcy estates if Wachovia were to enforce its liens and claims under applicable non-bankruptcy law." The same proposition is repeated in the Motion [D.E. 692] at paragraph 51. The Motion [D.E. 692] was filed on January 4, 2008. It was served on January 8, 2008.

Second the proposed agreement attached to the Motion [D.E. 692] at section 3.1 on page 14 provides that the lien being granted under the DIP Financing constitute "perfected first priority priming Liens on all Collateral other than the Excluded Assets, subject in all event to any Priority Lien Claims existing on the Petition Date." It was filed and served with the Motion [D.E.692].

Third, prior to the preliminary hearing held on January 9, 2008 the objecting creditors were sent Notice Package #1 [D.E. 716]. This package was in addition to the normally generated notice of hearing [D.E. 703]. At the preliminary hearing the key features of the DIP Financing were announced in open court and a date was set for the final hearing some two weeks in advance.

Fourth, prior to the final hearing Wachovia sent out Notice Package #2 which contained in block letters, bold and underlined the following language "**EXTINGUISHMENT OF JUNIOR LIENS**". [D.E.860]. This was in addition to other language contained in Notice Package #2 that would have placed a person on sufficient notice that the debtor intended to value the collateral. This was sent on January 15, 2008, one full week prior to the hearing. Therefore the Court is satisfied that the objecting parties were given fair, full and adequate notice that the final hearings on the Motion [D.E. 692] would seek to value the collateral of the Debtors at a

point low enough to argue that liens junior to Wachovia would be wholly unsecured. True to that end sufficient and convincing evidence to that effect was received by the Court.

The Court is unconvinced that some "magic" phrase or language must have been included in the notice stating that there was going to be a valuation component to the hearing. The Court agrees with reasoning in *In re Britt*, 199 B.R. 1000 (Bankr. N.D. Ala. 1996). In *Britt*, the court held notice was sufficient provided it gave notice of "the ultimate result of the Court's determination of the value of collateral -- the extent of allowed secured claims." *In re Britt*, 199 B.R. 1000,1011 (Bankr. N.D. Ala. 1996). The *Britt* Court further explained that a secured creditor who knows its interests may be "adversely affected by a Court ruling" at a hearing "knows everything which *Calvert* and Rule 3012 require." Id. The *Britt* Court held that notice given to the secured creditors the information regarding the effect of the legal ruling on their claims, it had complied with requirements under Rule 3102 and the Eleventh Circuit ruling in *Green Tree Acceptance, Inc. v. Calvert (In re Calvert)*, 907 F.2d 1069 (11th Cir. 1990). *Id.*

The Court finds as matter of law that the notice described above was sufficient to put the objecting creditors on notice of the ultimate treatment of their claims, should the DIP Financing be approved. Furthermore, unlike chapter 13 cases, this case had a preliminary hearing on the motion where all parties were apprised of what was in the motion. There was also two days of evidentiary presentation permitted. There is simply no basis for a claim of lack of notice that the Debtors proposed to establish that the value of the collateral was so low that Wachovia was materially undersecured and all junior lien holders were consequently unsecured.

Accordingly, the Court concludes that sufficient notice was given to all affected parties. Therefore, this objection will be overruled.

2. Competency of Mr. Young to Testify:

The objecting creditors have argued that Mr. Young was "not qualified to give... testimony and his testimony was not was based upon competent evidence upon which [the] Court could make a determination on the value of the Debtors' Wachovia Properties." [D.E. 1073 at 8]. The objectors argue that Mr. Young does not have the knowledge an owner of property would have because he has been with the Debtors for a relatively short period of time. They further argue that his opinion of the value of the properties was not based on evidence properly in the record.

"[I]t is settled that the owner of personal property is qualified by his ownership alone to testify as to its value. The weight of such testimony is, of course, affected by the owner's knowledge of circumstances which affect value..." *Berkshire Mut. Ins. Co. v. Moffett*, 378 F.2d 1007, 1011 (5th Cir. 1967)(ruling that the owner of a building was competent to testify as to the value of building and property within it that was destroyed); *accord Electro Servs. v. Exide Corp.*, 847 F.2d 1524, 1527 (11th Cir. 1988). This rule has been extended to real property valuations. *See In re Deep River Warehouse, Inc.,* 2005 Bankr. LEXIS 1090 at 30 (Bankr. M.D. N.C. 2005)(holding that the sole shareholder of a corporation was permitted pursuant to FED. R. EVID. 701 to "state his opinion as an owner" as to the value of the real property.)

The objecting creditors further argue that even if Mr. Young's testimony would be admissible under FED. R. EVID. 701, it is still not valid because such testimony must be "founded upon evidence in the record, rather than upon conjecture, speculation or unwarranted assumptions." *Snowbank Enterprises, Inc. v. United States*, 6 Cl. Ct. 476, 486 (Cl. Ct. 1984).

The case before this Court is distinguishable from the *Snowbank* case. In *Snowbank* the President and Vice President of the company testified as to the value of the property. *Snowbank*

6 Cl. Ct. at 486. The President of the company was an electrician by trade. *Id.* The Vice President, a native Minnesotan, testified on the basis "of his experience, familiarity with the northeastern Minnesota area, and personal appraisal of the property..." *Id.* Mr. Young does not fall into the class of owner that was found in the *Snowbank* case.

A more representative case for the situation before this Court is *South Cent. Livestock Dealers, Inc. v. Security State Bank*, 614 F.2d 1056 (5th Cir. 1980).[2] In that case a Feedlot went into bankruptcy as a result of several transactions made with the bank and an associated lawsuit. *South Cent. Livestock Dealers, Inc.* 614 F.2d at 1058. As part of the proceedings the Feedlot's financial officer was called to testify that the Feedlot's "assets exceeded its liabilities by around $100,000 at the time of the offset." *Id* at 1061. This testimony was objected to by the bank "on the grounds that [the financial officer's] testimony to that effect was unreliable opinion evidence of a layman." *Id.*

The Fifth Circuit held that "the excess of the value of the Feedlot's assets over its liabilities is closely akin to the testimony of an owner of a business about that business's value. The value of the Feedlot was, in large part, simply the excess of the value of its assets over the value of its liabilities. The financial officer of the Feedlot was a witness qualified to testify to value by knowledge and experience just as an owner is such a witness, and the district court did not err in allowing him to testify." *Id.*

The Levitt situation is analogous. The primary value of the Levitt entities is the excess value of the real property assets they hold less the liabilities thereupon. Just as the financial officer of the in *South Cent. Livestock Dealers, Inc.* was competent to testify as to that amount.

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before 1 October 1981.

So too Mr. Young, the Chief Restructuring Officer of the Debtors and a highly trained and experienced professional, was competent to testify that the value of the real property was substantially and materially less then the value of the Wachovia pre-petition line.

Accordingly, the Court will overrule this objection. Mr. Young was clearly competent to testify and his testimony was credible and convincing.

### 3. The Proposed DIP Financing Improperly Extinguishes State Law Rights of the Junior Liens

The objecting creditors argue that the DIP is improper because " it permits [the Debtors] to obtain credit or incur debt on their property already subject to pre-petition liens, particularly mechanics liens properly perfected pursuant to state law, and on their properties that were cross collateralized pre-petition." [D.E. 1073 at 10-11].   The objection rests on the ground that the existing liens, both Wachovia and the junior liens prevent the court from approving the DIP Financing under 11 U.S.C. §364(c).However, to the extent DIP Financing seeks to prime any of these liens relief is being sought under 11 U.S.C. §362(d) not under 11 U.S.C. §362(c). As to the concerns of adequate protection those have already been extensively dealt with above.

Accordingly, the Court does not believe that the DIP Financing improperly eliminates any rights of the junior lien holders.

### 4. The Proposed DIP Financing is Not a Loan.

The Objecting creditors have alleged that the Debtor is not receiving any financing under the DIP Financing, because Wachovia and the Chief administrator are given control in deciding which homes to build and how the money should be used. [D.E. 1073 at 13]. This argument fails upon a facial reading of the proposed loan document [D.E. 692, Exhibit A].

Pursuant to the loan document the "Chief Administrator shall be the Borrower's Representative." [D.E. 692, Exhibit A, at 2]. The loan documents are clear that the term

"Borrower" means the Wachovia Debtors. [D.E. 692, Exhibit A, at 1]. The loan document also states that Chief Administrator in conjunction with the Wachovia will determine "appropriate scope of construction activity to be undertaken from time to time within the [Wachovia Projects]." [D.E. 692, Exhibit A at 12]. Accordingly, the Court finds that loan is being extended to the Debtors and that they will have capable and adequate control over the funds at all times through Mr. Kapila, the Chief Administrator. Therefore, this objection will be overruled.

5. The §363 Sale Provision

The Objecting Creditors claim that the DIP Financing would allow Wachovia to sell the Debtors' property free and clear notwithstanding the provisions of §363(f). [D.E.1073 at 14]. Their angst stems from this line in the proposed loan document "The Court shall be authorized to approve sales under §363 even if junior lien holders will not be paid in full from proceeds of such sales." [D.E. 692, Exhibit A at 18].

Section 363(f)(3) permits the sale of property free and clear of all liens provided one of its 5 sub-sections is applicable. The objecting creditors argument presumes that only §363(f)(3) applicable to the future sales that will be brought to the Court for approval.  This is a faulty assumption.

Section 363(f)(3) provides for the sale of property free and clear "only if such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property…" 11 U.S.C. §363(f).  The issue is whether the sale price must be greater than the aggregate face value of the debt or the value of the collateral. The objecting creditors contend that in order for a §363(f)(3) sale to occur the sale must be greater than the face value of the liens.

There has been a sharp divide among courts as to the meaning of the word "value" in §363(f)(3). A number of courts construe the term "value" to mean the face amount of the liens.

Therefore, a sale free and clear of liens cannot be approved unless the sale price exceeds the total amount of debts against the property. See *Matter of Riverside Inv. Partnership*, 674 F.2d 634, 640 (7th Cir. 1982); *In re Heine*, 141 B.R. 185 (Bankr. S.D. 1992); I*n re Terrace Chalet Apartments, Ltd.*, 159 B.R. 821 (N.D. Ill. 1993); *In re Julien Co.*, 117 B.R. 910 (Bankr. W.D. Tenn. 1990). Other courts construe the term "value" to mean the secured value, and not the face amount of the lien. *In re Collins*, 180 B.R. 447 (Bankr. E.D. Va. 1995).

However, that is not the only method permitted to conduct a §363(f) sale. The Court may also approve a sale free and clear of liens "if such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. §363(f)(5). Courts have established that the term "money satisfaction" does not mean "full money satisfaction". *In re Grand Slam U.S.A.*, 178 B.R. 460, 461 (E.D. Mich. 1995)(holding that requiring full money satisfaction "is inconsistent with the Bankruptcy Code"); *In re Healthco Int'l, Inc.*, 174 B.R. 174, 176 (Bankr. D. Mass. 1994)(Construing "money satisfaction of such interest" appearing in subparagraph (f)(5) to mean a payment constituting less than full payment of the underlying debt. Because any lien can always be discharged by full payment of the underlying debt, there would be no sense in subparagraph (f)(5) authorizing a sale only if that could be done."). Thus, this Court could approve sales pursuant to §363(f)(5) provided that a legal or equitable proceeding existed that could force a junior lien holder to accept a payment of less than the full amount of the security interest.

It is important to focus on the hypothetical nature of language of §363(f)(5). The section provides that as long as the junior interest "could be compelled" it is sufficient to authorize a §363(f)(5) sale. There is no requirement that the legal or equitable proceeding compelling the acceptance of less then full value actually occur prior to the §363(f)(5) sale, or if at all.

Furthermore, if the "legal or equitable proceeding" contemplated by §363(f)(5) would result in the junior lien holder receiving nothing, then a §363(f)(5) sale that pays them nothing or gives them an unsecured claim to be redeemed for some dollar amount would appear to be permissible. *See e.g. Scherer v. Federal Nat'l Mortgage Ass'n (In re Terrace Chalet Apartments Ltd.).*, 159 B.R. 821, 829 (N.D. Ill. 1993)(adopting the view "authoriz[ing] the sale and consequent lien extinguishment if the creditor could be crammed down pursuant to Section 1129(b)(2)"); *In re Gulf States Steel*, 285 B.R. 497, 508 (Bankr. N.D. Ala. 2002)(noting that "Section 363(f)(5) permits a sale free and clear if the trustee can demonstrate the existence of another legal mechanism by which a lien could be extinguished without full satisfaction of the secured debt.").

It would be imprudent for the Court to decide at this time what state or federal proceedings would be sufficient to allow a sale under §363(f)(5); as there is no pending sale before the Court. Further, this analysis should not be taken to limit the ability of the Debtor or anyone else authorized to bring a §363(f) sale motion to rely on a different aspect of the provision. Each sale will be subject to an independent basis of approval.

Accordingly, the language in the DIP Financing document is entirely consistent with the Court's reading of §363. Whether the movant is able to make the requisite showing under §363 is properly determined when there is a §363 motion pending. Therefore, this last objection will be overruled.

## CONCLUSION

Based on the foregoing the Court finds that the DIP Financing is in the best interests of the Wachovia Debtor estates. The Court further finds that this DIP Financing is the best and probably only possible loan available to the Debtors. The Court finds that each of the substantive objections brought by the junior lien holders is to be overruled, for the reasons stated above.

Finally, it is important to note that this DIP loan is the best hope for the Home Purchase Deposit Creditors to have their homes and communities finished. These Home Purchase Deposit Creditors are individuals who contracted to purchase a home from the Debtors. Many of these creditors are retired or approaching retirement age. The Court is cognizant that even with the DIP loan there is a possibility that some of these Home Purchase Deposit Creditors may not have their homes built. However, this DIP loan is the best chance they have. The potential impact of the loan on these floundering communities could be substantial.

Accordingly, it is

**ORDERED** that

1. the *Motion for Order Under 11 U.S.C. 105,362,363,364 and Federal R.Bankr. P.2002,4001 and 9014 (I)Authorizing Certain Debtor's to Obtain Secured Post - Petition Financing on Superpriority Secured and Priming Basis,(II)Modifying the Automatic Stay Pursuant to Section 362 of the Bakruptcy Code,(III)Aproving the Sale of Homes In The Ordinary Course of Business with Liens to Attach to Sale Proceeds, (IV)Approving Soneet R. Kapila as Chief Administrator* [D.E. 692] is **APPROVED and GRANTED**.

2. the following Objections [D.E.899, 909, 910, 914, 915, 922, 964, 978] are **DENIED** for the reasons stated above.

3. the following Objections [D.E.855, 913 and 941] will be dealt with by separate order.

# # #

Copy to:
Paul Steven Singerman, Esq. *(Attorney Singerman shall serve a copy of this Memorandum Opinion upon all interested parties upon receipt and file a certificate of service.)*