ORDERED in the Southern District of Florida on ___07/16/08___



Raymond B. Ray, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                          Chapter 11 Cases

LEVITT AND SONS, LLC,                           Case No. 07-19845-BKC-RBR
a Florida limited liability company, et al.

                                                Jointly Administered

      Debtors.
_____/

## <u>MEMORANDUM OPINION AND ORDER</u>

      This matter is before the Court on the request for relief (the "Homebuyer Lien Motion")

filed by Joseph and Jacqueline D'Alessandro (the "D'Alessandros" or the "Homebuyers") (C.P.

No. 1669).  In the Homebuyer Lien Motion, the Homebuyers claim that they are entitled to a

statutory and/or equitable lien on a specific lot in the residential real estate development

commonly known as the Seasons at Lake Lanier ("Lake Lanier") and assert that their lien is

senior and prior in right of payment to the security deed of Wachovia Bank, National Association

("Wachovia") on the subject property.

      In opposition to the Homebuyer Lien Motion, Wachovia filed its objection to the

Homebuyer Lien Motion (the "Objection") (C.P. No. 2115), its motion for summary judgment

1678780 v1

with respect thereto (the "Summary Judgment Motion") (C.P. No. 2280) and its reply in support of its motion for summary judgment (the "Reply") (C.P. No. 2642).

Levitt and Sons of Hall County, LLC, Levitt and Sons of Horry County, LLC, Levitt and Sons of Cherokee County, LLC, Levitt and Sons of Paulding County, LLC, Levitt and Sons at World Golf Village, LLC, and Levitt and Sons of Manatee County, LLC (collectively, the "Wachovia Debtors") joined in Wachovia's Summary Judgment Motion (C.P. No. 2711). The Unsecured Creditors Committee also supported the Summary Judgment Motion at the June 24, 2008 hearing described below.

The Home Purchase Deposit Holders Committee of Creditors (the "Deposit Holders Committee") filed a response to the Homebuyer Lien Motion and the Summary Judgment Motion (C.P. No. 2736).

On June 24, 2008 at 9:30 a.m. in Ft. Lauderdale, Florida, this Court convened a final evidentiary hearing on Homebuyer Lien Motion (the "Hearing"). The documents admitted into evidence at the Hearing include docket entry 237, 320, 733, 836, 941, 1335, 1366, 1669, 1967 2390, and 2734. The Court also accepted the proffered testimony of Bruce Perrine, a representative of Wachovia. After due deliberation and sufficient cause appearing therefore and for the reasons stated by the Court herein and on the record at the Hearing, the Court hereby makes the following findings of fact and conclusions of law applicable to the Homebuyer Lien Motion (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and vice versa).

## FINDINGS OF FACT

1.      Wachovia, as lender, and Levitt and Sons, LLC ("LAS"), as borrower, are parties to that certain Revolving Land Acquisition, Development and Residential Construction Borrowing Base Facility Agreement dated as of January 5, 2006 (the "Original LAS Credit

Agreement"), pursuant to which Wachovia agreed to make available to LAS a revolving line of credit in a principal amount not exceeding the sum of $100,000,000.

2.　　Pursuant to the terms of that certain First Amendment to Loan Facility Agreement between Wachovia and LAS dated as of May 31, 2006 (the "First Amendment"), the Original LAS Credit Agreement was amended to, among other things, increase the stated principal amount available to be drawn under said revolving line of credit to the sum of $125,000,000. The Original LAS Credit Agreement, as amended by the First Amendment, is hereinafter referred to as the "Credit Agreement." The $125,000,000 revolving credit facility established by the Credit Agreement is hereinafter referred to as the "Loan."

3.　　The indebtedness of LAS under the Credit Agreement is evidenced by that certain Amended and Restated Revolving Loan Promissory Note dated as of May 31, 2006, payable by LAS to the order of Wachovia in the original principal amount of $125,000,000 (the "Note"), which Note amends and restates in its entirety that certain Revolving Loan Promissory Note dated as of January 5, 2006, payable by LAS to the order of Wachovia in the original principal amount of $100,000,000.

4.　　As security for the obligations of LAS to Wachovia with respect to the Loan, Levitt and Sons of Hall County, LLC ("Hall") executed and delivered to Wachovia that certain Deed to Secure Debt, Security Agreement and Assignment of Leases and Rents dated as of January 31, 2006, and recorded in the Office of the Clerk of Superior Court of Hall County, Georgia, in Book 5584, Page 521, as amended by that certain First Modification of Deed to Secure Debt and Notice of Future Advance Agreement dated as of May 31, 2006, and recorded in the Office of the Clerk of Superior Court of Hall County, Georgia, in Book 5738, Page 238 (as so amended, the "Security Deed"), granting to Wachovia a first priority security title in and

continuing security interest in certain real and personal property assets of Hall more particularly described therein, which includes the Lake Lanier development (the "Property").

5.      The Property is situated in Hall County, Georgia.

6.      The Security Deed encumbers the entirety of Lake Lanier, except for those parcels released by Wachovia.  The lot at issue in the Homebuyer Lien Motion has not been released by Wachovia.

7.      On May 11, 2007, Hall, as seller, and the D'Alessandros, as buyers entered into a purchase and sale agreement for lot 136 in the Lake Lanier development (the "Lot").

8.      On May 12, 2007 and June 11, 2007, respectively, the D'Alessandros tendered payments to Hall for the deposit required by the purchase and sale agreement, which said payments totaled $69,041.00 (the "Deposit").

9.      The Deposit was not escrowed by Hall or otherwise segregated and is not available for return to the D'Alessandros.

10.     On November 9, 2007 (the "Petition Date"), Hall, LAS and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "Bankruptcy Code").

11.     The Debtors continue to operate their businesses and manage their assets as debtors in possession pursuant to 11 U.S.C. §§1107 and 1108.

12.     On December 3, 2007, the D'Alessandros filed a motion (C.P. No. 286) requesting return of the Deposit and further requesting that the court cancel their contract with Hall.

13.     On January 4, 2008, the Wachovia Debtors filed a motion (the "DIP Financing Motion") (C.P. No. 692) requesting entry of an order under 11 U.S.C. §§ 105, 362, 363, and 364 and Fed. R. Bankr. P. 2002, 4001 and 9014 (i) authorizing the Wachovia Debtors to obtain

secured post-petition financing from Wachovia on a superpriority secured and priming basis; (ii) modifying the automatic stay pursuant to Section 362 of the Bankruptcy Code; (iii) approving home sales in the ordinary course of business with liens to attach to sale proceeds; (iv) approving Soneet R. Kapila as Chief Administrator of Borrower; (v) granting interim relief; and (vi) scheduling a final hearing.

14. On January 9, 2008 at 9:30 a.m. in Ft. Lauderdale, Florida, the Court conducted a preliminary hearing (the "Interim Hearing") on the DIP Financing Motion, and entered an interim order (the "Interim Order") (C.P. No. 836) approving the financing requested in the DIP Financing Motion, pending a final hearing on the DIP Financing Motion.

15. On January 10, 2008, the Court entered an order (C.P. No. 767) denying the D'Alessandros request to cancel their contract, without prejudice, at the request of the D'Alessandros.

16. On January 18, 2008, the D'Alessandros filed a motion to continue the final hearing on the DIP Financing Motion (C.P. No. 941), which was denied in open court as reflected by court paper number 1411.

17. The Court convened a final evidentiary hearing on the DIP Financing Motion, commencing January 23, 2008 at 9:30 a.m. and concluding on January 24, 2008, in Ft. Lauderdale, Florida (the "Final Hearing").

18. At the Final Hearing, Larry Young, the Debtors' chief restructuring officer, testified that there is no equity in the Wachovia Projects over and above Wachovia's pre-petition liens on the Wachovia Projects.

19. On February 13, 2008, the Court entered its *Memorandum Opinion Approving Wachovia Debtors' DIP Financing Motion* (the "Memorandum Opinion") (C.P. No. 1335) and its

final order (the "Final DIP Financing Order") (C.P. No. 1366), granting the relief requested in the DIP Financing Motion.

20.     The Memorandum Opinion states on page 12:

> The Court finds Young's testimony credible and convincing. Based on his credible testimony, the Court announced at the hearing that it found as a matter of fact that the value of assets securing each of Wachovia's credit facilities was less than the amount owed to Wachovia on each of the respective Loans. As a result, it is a factual reality that there is no equity in any of the Wachovia Projects to secure any putative liens of any junior lien holder on any of the Wachovia Projects.

21.     Six related orders were entered by the Court on February 13, 2008 (C.P. Nos. 1370, 1371, 1372, 1373, 1374 and 1375), each of which is entitled *Order Approving Sales of Property In The Ordinary Course Of Business, Establishing Procedure For Determination Of Lien Priorities, Setting Deadline For the Assertion Of Lien Claims And Converting Junior Liens To Unsecured Claims* (the "Ordinary Course Sale Orders").

22.     The Final DIP Financing Order provides on page four that "all liens, claims, interests, and encumbrances against any assets of the Borrower that are junior to Wachovia's interest are hereby stripped off the respective assets of Borrower in their entirety."

23.     In the Final DIP Financing Order, the Court set a deadline of March 10, 2008 for any party claiming a lien superior to Wachovia's pre-petition lien to file a statement setting forth the nature of the lien and the legal basis for the assertion that the lien is superior to Wachovia's position.

24.     The Ordinary Course Sale Order docketed as court paper number 1373 (the "Lake Lanier Ordinary Course Sale Order") further provides that the liens of Wachovia upon the Property shall be presumed to constitute senior first priority liens to the full extent of all proceeds from any sale of the Property and states that unless the holder of any other lien upon the property

shall have filed, within 30 days after the entry of the Lake Lanier Ordinary Course Sale Order, a motion seeking an adjudication that its lien is senior and prior in right of payment to the liens of Wachovia, its lien claim shall be converted to an unsecured claim.

25.    The D'Alessandros filed their Homebuyer Lien Motion (C.P. No. 1669) on March 5, 2008, claiming a lien on the Lot.

26.    On April 18, 2008, Wachovia filed its Objection (C.P. No. 2115) to the relief requested in the Homebuyer Lien Motion.

27.    On May 12, 2008, Wachovia filed its Summary Judgment Motion (C.P. No. 2280) with respect to the relief requested in the Homebuyer Lien Motion.

28.    On May 20, 2008, the D'Alessandros filed a response to the Summary Judgment Motion (C.P. No. 2390).

29.    Wachovia filed its Reply (C.P. No. 2642) in support of its Summary Judgment Motion on June 17, 2008.

30.    On June 20, 2008, the D'Alessandros filed a letter (C.P. No. 2734) responding to Wachovia's Reply.

31.    Also on June 20, 2008, the Wachovia Debtors filed a pleading (C.P. 2711) joining in Wachovia's Summary Judgment Motion.

32.    The response (C.P. No. 2736) of the Deposit Holders Committee was filed on June 23, 2008.

## CONCLUSIONS OF LAW

### I.    JURISDICTION

This Court has jurisdiction of the matters raised in the Homebuyer Lien Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Homebuyer Lien Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).

## II.    GEORGIA STATUTORY LIEN

In the Homebuyer Lien Motion, the D'Alessandros assert that Section 13-4-61 of the Code of Georgia gives the Homebuyers a statutory lien on the Lot senior and prior in right of payment to Wachovia's Security Deed.   Section 13-4-61 of the Code of Georgia states as follows:  "Except as otherwise provided in Title 11, the 'Uniform Commercial Code,' where a contract of sale is rescinded for fraud, the rights of the vendor reclaiming the goods are superior to those of one who has acquired the goods or a lien thereon in consideration of an antecedent debt."  Ga. Code Ann. § 13-4-61.  The code section codifies a decision of the Georgia Supreme Court, *Dinkler v. Potts*, 15 S. E. 690 (Ga. 1892), in which it was held that it was held that where goods were fraudulently purchased, entitling the seller to a rescission, a mortgage, given by the purchaser to a creditor to secure an antecedent debt, was inferior to the seller's right to rescind. *See Sutton v. Ford*, 87 S.E. 799, 803 (Ga. 1916).  In the instant case, Hall is the vendor and the Homebuyers are the purchasers.  The "good" that would have been tendered is the Lake Lanier Lot.   First, because real property is not "goods," the statute is wholly inapplicable to the transaction at issue.   Moreover, even if real property could be construed as "goods" for the purposes of this statute, since it is the purchasers alleging a right to rescind due to alleged fraud on the part of the seller, the statute does not apply.  The statute merely provides that a **seller's** right to rescind and reclaim the goods sold is superior to the rights of a grantee of a mortgage given by the purchaser for an antecedent debt.  The statute does not grant  a purchaser a lien.  As such, even if the Homebuyers could establish fraud on the part of Hall with respect to the Deposit, the statute does not give the Homebuyers a lien on the Lake Lanier Lot.

## III.    GEORGIA EQUITABLE LIEN

The Homebuyers also claim that they are entitled to an equitable lien on the Lot having priority over Wachovia's security deed.  The Court must look to applicable state law to determine

whether an equitable lien is appropriate. *In re Adell*, 321 B.R. 562, 569 (Bankr. M.D. Fla. 2005).

A bankruptcy court must also look to state law to determine the priority of an equitable lien. *In re Abrass*, 268 B.R. 665, 684 (Bankr. M.D. Fla. 2001). As the Property is situated in Georgia, the law of Georgia is determinative as to the existence and priority of the claimed equitable lien. The Supreme Court of Georgia has held that "a special lien on specific property may be decreed whenever under the rules of equity the circumstances require this remedy." *Country Greens Village One Owner's Association Inc. v. Meyers*, 281 S.E.2d 346, 349 (Ga. App. 1981) (quoting *Chapple v. Hight*, 131 S.E. 505 (Ga. 1926)). However, even if the circumstances of this case had warranted the imposition of an equitable lien in favor of the Homebuyers, Georgia law provides that a party who establishes entitlement to an equitable lien takes subject to the rights of a mortgagee if the mortgagee is a bona fide purchaser. *Middlebrooks v. Lonas*, 272 S.E.2d 687, 689 (Ga. 1980). To qualify as a bona fide purchaser for value without notice, a party must have neither actual nor constructive notice of the matter at issue. *Mabra v. Deutsche Bank & Trust Co. Americas*, 627 S.E.2d 849, 851 (Ga. App. 2006). As the undisputed facts clearly show, Hall made the Security Deed to Wachovia over a year before the Homebuyers entered into their purchase and sale agreement with Hall and tendered the Deposit to Hall. Thus, Wachovia could have neither actual or constructive notice of the matter at issue, and its Security Deed has priority over any equitable lien established by the Homebuyers under Georgia law. Accordingly, even if the Homebuyers could establish that they were entitled to an equitable lien on the Lake Lanier Lot, the undisputed facts show that the lien was subordinate to Wachovia's Security Deed and, therefore, has been stripped by the Final DIP Financing Order. *See* Final DIP Financing (C.P. No. 1366), p. 4.

### IV.    11 U.S.C. § 365(j) LIEN

Finally, the Homebuyers allege that they are entitled to a lien under 11 U.S.C. § 365(j) and that said lien is senior to Wachovia's Security Deed.  Section 365(j) provides a lien to purchasers of real property whose contracts to purchase real property are rejected by a debtor up to the value of any deposit monies paid by the purchaser.  See 11 U.S.C. § 365(j).  As such, if the D'Alessandros' contract with Hall is rejected,[1] the D'Alessandros could claim a lien up to the value of the deposit monies tendered to Hall.  The lien created by § 365(j), however, relates back to the bankruptcy petition date, and has the lowest priority of all security interests in the bankruptcy estate.  *See 18th Avenue Development Corp. v. Milgram*, 10 B.R. 107 (Bankr. S.D. Fla. 1981) ("An equitable lien of a rejected Contract Vendee attaches to the Debtor's interest on the date the Petition was filed"); *Thompson Designs, Inc. v. Treasurer of Hamilton County*, 213 B.R. 725, 729 (Bankr. S.D. Ind. 1997) ("[I]t is clear that Congress intended 365(j) liens to have the very lowest priority of all secured interests in the bankruptcy estate."); and *Aetna Bank v. Dvorak*, 176 B.R. 160 (N.D. Ill. 1997) ("[W]e have found no evidence that the protection embodied in § 365(j), a lien on the debtor's interest in the property that was the subject of the executory contract, was meant to include a special priority for that lien.").  As such, to the extent the D'Alessandros may acquire a lien claim pursuant to § 365(j) of the Bankruptcy Code, said lien would be junior to Wachovia's pre-petition security deed on Lake Lanier.  Accordingly, the D'Alessandros' § 365(j) lien has been stripped pursuant to the Final DIP Financing Order.  *See* Final DIP Financing (C.P. No. 1366), p. 4.

Notably, on April 30, 2008, this Court ruled in open court that 365(j) liens of other homebuyers were stripped pursuant to the Final DIP Financing Order.  To conclude otherwise

---

[1] At this time, the contract has not been rejected or assumed.

would give 365(j) lien claimants priority over other junior lien claimants whose liens were stripped by the Final DIP Financing Order. The D'Alessandros' argument that there has been no evidence as to the value of the Wachovia Projects is incorrect. This Court received evidence and has found and concluded that there is no equity in the Wachovia Projects over and above the pre-petition liens of Wachovia encumbering the projects. *See* Memorandum Opinion (C.P. No. 1335), p. 12. The D'Alessandros do not dispute that they had notice and an opportunity to participate in the Final Hearing, nor did they appeal the Final DIP Financing Order. As such, the Final DIP Order is final and binding, and to the extent the D'Alessandros may claim junior liens on Lake Lanier, those junior liens were stripped by the Final DIP Financing Order.

The contention that this results in disparate treatment of homebuyers is untenable. All 365(j) lien claims were stripped by the Final DIP Financing Order. That Wachovia has consented to providing credits for deposits to homebuyers whose deposits were not escrowed by the Wachovia Debtors should not be used to elevate other homebuyers to a senior and prior position to the detriment of the other junior lien creditors. Though Wachovia is not able to fund completion of all homes in the Wachovia Projects, Wachovia and the Chief Administrator for the Wachovia Debtors have offered homebuyers such as the D'Alessandros the opportunity to purchase other homes within the Wachovia Projects and receive credits for deposit monies paid. Ultimately, that some purchasers have elected to complete construction of their homes or purchase another home and receive credit for the deposit paid does not support the relief requested by the D'Alessandros.

## CONCLUSION

For the reasons set forth herein, it is hereby **ORDERED** that the relief requested in the Homebuyer Lien Motion is **DENIED**.

# # #

1678780 v1                                                            11

<u>Submitted by:</u>
Robert N. Gilbert
Florida Bar No. 310662
CARLTON FIELDS, P.A.
222 Lakeview Avenue, Suite 1400
West Palm Beach, Florida 33401
Telephone:  (561) 659-7070
Facsimile:  (561) 659-7368
E-mail:  rgilbert@carltonfields.com

<u>Copy to:</u>
Robert N. Gilbert, Esq. *(Attorney Gilbert shall serve a copy of this Memorandum Opinion and Order  upon all interested parties upon receipt and file a certificate of service.)*