## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

In re:                                         )
                                               )        Chapter  11
LEVITT AND SONS, LLC,                          )
a Florida limited liability company, *et al*., )        Case Number:  07-19845-BKC-RBR
                                               )
                    Debtors.                   )        Jointly Administered
                                               )

## MOTION OF THE CHIEF ADMINISTRATOR FOR AN ORDER
## (I) APPROVING THE SALE OF LAKE LANIER ASSETS FREE
## AND CLEAR OF LIENS, CLAIMS AND INTERESTS, (II) APPROVING
## BID PROCEDURES, OVERBID PROTECTION AND A BREAKUP
## FEE, AND (III) GRANTING RELATED RELIEF

Soneet Kapila, as the Chief Administrator for Levitt and Sons of Horry

County, LLC, Levitt and Sons of Hall County, LLC, Levitt and Sons of Cherokee

County, LLC, Levitt and Sons of Paulding County, LLC, Levitt and Sons at World

Golf Village, LLC and Levitt and Sons of Manatee County, LLC (collectively, the

"Post Confirmation Wachovia Debtors") moves the Court pursuant to §§ 105 and

363 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy

Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Local Bankruptcy Rules 2002-1 and 6004-1 (i) for

authority to sell assets to Kolter Group, LLC[1] ("Kolter"), or to a party submitting a

higher or better offer; (ii) to enter an order conditionally approving the sale and

approving bid procedures (including notice and auction procedures), an overbid

protection and a breakup fee substantially in the form attached as Exhibit A (the

---

[1]   As set forth in the Purchase Agreement (as defined below), "Kolter Group, LLC" includes the permitted
assigns of that entity.

"Breakup Fee and Bid Order");  (iii) to enter an order, substantially in the form attached as Exhibit B (the "Sale Order") finally approving the sale to Kolter or to the party submitting the highest or best offer, free and clear of all liens, claims, interests and encumbrances, and other interests, whether or not of record, other than Permitted Liens, as defined in Article I of the Purchase Agreement (defined below); and (iv) for such other relief as the Court deems appropriate (the "Motion").  In support of the Motion, the Movant states:

## BACKGROUND

1.    By order dated February 20, 2009 (C.P. 4646) (the "Confirmation Order"), confirming the Second Amended Joint Chapter 11 Liquidating Plan of Levitt and Sons, LLC and its affiliated debtors (the "Plan"), the Court appointed Soneet Kapila as Chief Administrator for the Post Confirmation Wachovia Debtors.[2]

2.    In accordance with paragraph 8 of the Confirmation Order, the Chief Administrator is "authorized to sell the Wachovia Collateral[3] with or without the Court's approval, subject only to Wachovia's consent to release liens in connection with such sales."

---

[2]  The Confirmation Order further provides that the terms "Chief Administrator" and "Wachovia Collateral Administrator" may be used interchangeably (*See* Footnote 4, p. 11)

[3]   All terms not defined in this Motion shall have the meaning ascribed to them in the Confirmation Order and Plan.

3.      The Levitt and Sons of Hall County, LLC Debtor (the "Lake Lanier Debtor") owns and is in the business of developing *Seasons on Lake Lanier* located in Hall County, Georgia ("Lake Lanier").  Lake Lanier is a planned community consisting of single family homes.

4.      The Chief Administrator has determined that a sale of Lake Lanier and its related assets as described in paragraph 5 below (collectively, the "Lake Lanier Assets") to Kolter for $12,400,000, subject to better or higher offers, is in the best interests of the Post Confirmation Wachovia Debtors' estates and creditors.  A sale of the Lake Lanier Assets will provide the Post Confirmation Wachovia Debtors with the ability to pay down their debts to Wachovia and potentially will provide funding for the continuing operations of the Post Confirmation Wachovia Debtors.  The sale of the Lake Lanier Assets will not disrupt the development of the Lake Lanier community.

5.      Kolter and the Chief Administrator, on behalf of the Lake Lanier Debtor, entered into the Amended and Restated Asset Purchase Agreement attached to this Motion as Exhibit C (the "Purchase Agreement") effective as of October 2, 2009 (the "Effective Date").  The material terms of the Purchase Agreement provide that at Closing, Seller will sell, assign, transfer and convey to Purchaser all of Seller's rights, title and interests in and to the following assets (collectively, the "**Assets**"):

        a) All of the real property owned by Seller and located at the Project as specifically described and

identified in *Schedule 2.1(a)* (the "**Real Property**");

b) All of the Seller's rights in and to the Project marina located in Lake Sidney Lanier adjacent to the Project (the "**Marina**"), including without limitation, the rights to the Marina boat slips that are identified in *Schedule 2.1(b)* (the "**Boat Slips**");

c) All of the tangible assets used in the design, construction, development, or marketing of the Project that are owned by Seller which are listed in *Schedule 2.1(c)* (the "**Personal Property**"); provided, however, that Seller makes no representation or warranty of any kind with respect to the accuracy, adequacy or completeness of such schedule;

d) All of the intangible assets used in the design, construction, development, or marketing of the Project that are owned by Seller which are listed in *Schedule 2.1(d)* (the "**Intangible Property**"); provided, however, that Seller makes no representation or warranty of any kind with respect to the accuracy, adequacy or completeness of such schedule;

e) As set forth in *Schedule 2.1(e)*, as of the Effective Date there are fifty-nine (59) partially completed homes (including sixteen (16) model homes [two of which are built out and used as sales and design centers]) included in the Real Property (the "**Partially Completed Homes**"). Seller may only enter into a contract after the Effective Date for the completion and sale of those Partially Completed Homes identified on *Schedule 2.1(e)* as "Available for Sale" and then only for the minimum gross sale price established for such Partially Completed Home as set forth on *Schedule 2.1(e)* (each, a "**Homebuyer Contract**"). If Seller enters into a Homebuyer Contract, Seller shall proceed in the ordinary course of business to consummate the transaction contemplated in that contract. In the

4

event that the transaction contemplated in a Homebuyer Contract is closed and consummated prior to the Closing Date, Seller will provide the warranties on the Partially Completed Home in a manner consistent with its practices at the Project prior to the Effective Date, and one hundred percent (100%) of the Net Cash Proceeds of such sale will be escrowed with Escrow Agent and will be paid to Purchaser at Closing.  In the event that the transaction contemplated in a Homebuyer Contract is not consummated prior to the Closing Date, (i) each such Homebuyer Contract, together in each case with Seller's rights and interests in and to any Homebuyer Deposit related to that contract, will be transferred and assigned by Seller to Purchaser at Closing and shall be an "Assumed Contract," (ii) Purchaser will provide the warranties on such Partially Completed Home, and (iii) the Purchase Price shall be increased by an amount equal to the construction and other costs incurred by Seller to third parties from and after the Effective Date to complete the construction of the Partially Completed Home.

f)   All of the executory contracts and unexpired leases of Seller related to the Project described in *Schedule 2.1(f)* and all of the Homebuyer Contracts in effect as of the Closing Date (collectively, the "**Assumed Contracts**").   Seller and Purchaser agree that, as of the Confirmation Date, any contract for the purchase and sale of a home in the Project that was entered into by Seller prior to the Petition Date was rejected by Seller pursuant to Section 365 of the Bankruptcy Code; and

g)   All plans, surveys, specifications, schedules, drawings, blue prints, renderings, models, displays and schedules related to the Project (collectively, the "**Drawings**") together with all assignable licenses, permits, certificates of occupancy, consents and approvals, whether governmental or otherwise, related to the Project and to the extent owned by Seller (collectively, "**Permits**"), all as

specifically listed or described  in *Schedule 2.1(g)* (the Drawings and Permits being collectively referred to herein as the "**Project Documents**"); provided, however, that Seller makes no representation or warranty of any kind with respect to the accuracy, adequacy or completeness of such schedule; and

h) All prepaid non-refundable fees paid to any Governmental Entity for Permits (collectively, the "**Governmental Fees**").

6.     The sale of the Lake Lanier Assets to Kolter is subject to higher or better offers.  To ensure that maximum value is obtained, the Chief Administrator and Kolter have agreed to bid procedures, an overbid protection and a breakup fee (collectively, the "Bid Procedures") to govern the submission of competing bids for the Lake Lanier Assets and for the conduct of the auction and sale.  The Bid Procedures are included in the proposed Breakup Fee and Bid Order that is attached as Exhibit A.  If the Chief Administrator receives a higher or better offer, he will hold an auction in accordance with the Bid Procedures and the Breakup Fee and Bid Order.  The Chief Administrator reserves the right to reject all offers, including the offer represented by the Purchase Agreement.

7.     The Breakup Fee and Bid Order and Section 6.3 of the Purchase Agreement provide for an overbid protection in the amount of $500,000 for the Lake Lanier Assets.

8.     As set forth more fully in Sections 6.2 and 8.1 of the Purchase Agreement, provided (i) that Kolter is not in default under the Purchase Agreement

beyond any applicable notice and cure periods set forth in the Purchase Agreement or has not terminated the Purchase Agreement, and (ii) that the Court approves a sale of the Lake Lanier Assets to a Qualified Bidder other than Kolter, then the Chief Administrator shall be permitted, authorized, and directed to pay Kolter a Breakup Fee in the amount of $320,000 from sale proceeds. If the Chief Administrator decides to reject all bids for the Lake Lanier Assets (including the bid reflected by the Purchase Agreement) or fails to close the sale to Kolter pursuant to the terms of the Purchase Agreement and the Order of this Court, then, pursuant to Section 8.1 of the Purchase Agreement, the Chief Administrator shall pay the Breakup Fee to Kolter from the funds of the Lake Lanier Debtor and shall be authorized, permitted, and directed to pay from such funds.

**RELIEF REQUESTED**

9.      By this motion, the Chief Administrator asks the Court to (i) authorize the sale of the Lake Lanier Assets to Kolter, subject to higher or better offers; (ii) enter the Breakup Fee and Bid Order conditionally approving the sale and approving the bid procedures, overbid protection and breakup fee for Kolter and setting a date for a hearing to approve the sale; (iii) enter the Sale Order finally approving the sale to Kolter or to the entity that makes the highest or best bid, free and clear of all liens, interests and encumbrances, and other interests, whether or not of record, other than the Permitted Liens; and (iv) for such other and further relief as this Court deems necessary.

## APPLICABLE AUTHORITY

**A.    Bankruptcy Code Section 363(b) Authorizes the Sale.**

10.    Section 363(b)(1) of the Bankruptcy Code provides:  "[T]he trustee, after notice and a hearing, may use, sell, lease, other than in the ordinary course of business, property of the estate."  A debtor-in-possession is given these rights by Section 1107(a) of the Bankruptcy Code.  Moreover, Section 105(a) of the Bankruptcy Code provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

11.    A debtor's sale of assets should be approved when supported by a sound business reason.  *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).  *See In re B.D.K. Health Mgmt., Inc.* ("B.D.K. Health Mgmt."), Case Nos. 98-00609-6B1, 1998 WL 34188241, at *5 (Bankr. M.D. Fla. November 16, 1998) (approving sale on expedited basis where sale serves a sound business purpose); *see also Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.*), 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge determining a Section 363(b) application must find from the evidence presented before him a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (holding that "a bankruptcy court can authorize a sale of all of a

chapter 11 debtor's assets under Section 363(b)(1) when a sound business purpose dictates such action"); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991).

12.    Once a court is satisfied that a sound business reason for the sale exists, the Court must also consider whether (i) the sale price is fair and reasonable, (ii) the purchaser is proceeding in good faith, and (iii) the debtor has provided interested parties with adequate and reasonable notice. *Delaware & Hudson*, 124 B.R. at 175-176.

13.    The Post Confirmation Wachovia Debtors have sound business reasons for selling the Lake Lanier Assets.  A sale of the Lake Lanier Assets will provide the Post Confirmation Wachovia Debtors with the ability to pay down their debt to Wachovia and potentially provide funding for Post Confirmation Wachovia Debtors' continuing operations in implementing the Plan.  A sale of the Lake Lanier Assets will maximize the value from these assets and create additional availability for the Post Confirmation Wachovia Debtors' real estate developments.

14.    The sale of the Lake Lanier Assets is subject to competing bids, ensuring that the Post Confirmation Wachovia Debtors will receive the highest or best value for the Lake Lanier Assets.  Accordingly, the fairness and reasonableness of the consideration to be received for the Assets ultimately will be demonstrated by a "market check" and auction process--the best means for establishing whether a fair and reasonable price is being paid.

15.    Based upon the foregoing, the sale of the Lake Lanier Assets on the terms and conditions set forth in the Purchase Agreement (subject to higher or better offers) and pursuant to the proposed Breakup Fee and Bid Order is fair and reasonable and in the best interest of the Post Confirmation Wachovia Debtors, their creditors, and all parties in interest.

**B.    The Sale Satisfies the Requirements of Section 363(f).**

16.    The Post Confirmation Wachovia Debtors and the Chief Administrator request that the sale be approved free and clear of any liens, claims or interests.  Pursuant to Section 363(f), a debtor may sell property free and clear of liens, after notice and hearing if:

> (a)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (b)    such entity consents;
>
> (c)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (d)    such interest is in bona fide dispute; or
>
> (e)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

17.    Section 363(f) is drafted in the disjunctive.  Accordingly, a debtor's satisfaction of any of the five requirements will warrant the sale of assets free and clear of all liens, claims, interests, and encumbrances, and other interests, whether or not of record (collectively, "Liens"). Wachovia consents to the sale subject to

Wachovia's right to make a credit bid for the assets.  In addition, pursuant to the DIP Order, the Court has already stripped the Assets of any Liens that are junior to Wachovia's position.[4]

18.    Accordingly, the Chief Administrator requests that the Lake Lanier Assets be transferred to the highest bidder free and clear of all Liens other than Permitted Liens.

**C.    Good Faith Purchaser.**

19.    The Chief Administrator requests that the Court find that Kolter, or the party who ultimately submits the highest or best offer for the Lake Lanier Assets, acted in good faith within the meaning of Bankruptcy Code Section 363(m).

20.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

21.    Although the Bankruptcy Code does not define "good faith purchaser," bankruptcy courts which have considered the issue hold that a party

---

[4] In the DIP Order, this Court set a deadline of March 10, 2008 for any party claiming a superior lien against a Wachovia Debtor to file a statement setting forth the nature of the lien and the legal basis for the assertion that the lien is superior to Wachovia's position (D.E. No. 1366).  The deadline for asserting lien rights superior to Wachovia has long since passed and of the senior lien motions that were filed, all were withdrawn or denied by the Court.  Therefore, all junior liens have been stripped, and no senior liens exist.

would have to show fraud or collusion between the purchaser and the debtor to demonstrate lack of good faith.

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings.  Typically, the misconduct that would destroy a purchasers' good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

> *In re Apex Oil Co.*, 92 B.R. 847, 869 (Bankr. E.D. Mo. 1988).

*Accord Kabro Assoc. of W. Islip, LLC v. Coloy Hill Assoc. (In re Colony Hill Assoc.)*, 111 F.3d 269, 276 (2d Cir. 1997).

22.    The terms and conditions of the Purchase Agreement were negotiated at arm's length and in good faith.  To the best of the Chief Administrators' knowledge, Kolter (i) does not hold any interests in any of the Post Confirmation Wachovia Debtors and is not otherwise affiliated with Wachovia, the Post-Confirmation Wachovia Debtors or any of their officers or with the Chief Administrator, (ii) is not an "insider" of any of the Levitt Debtors within the meaning of Section 101(31) of the Bankruptcy Code, and (iii) is not controlled by, or acting on behalf of, any insider of any of the Levitt Debtors.  *See, e.g., In re After Six, Inc.*, 154 B.R. 876, 883 (Bankr. E.D. Pa. 1993) (good faith found where officers, directors and employees of debtor had no apparent connection to purchasers).  The Chief Administrator will negotiate any alternative bid at arm's length and in good faith within the meaning of Section 363(m).  Accordingly, the

Chief Administrator requests that the Court determine that Kolter or, an alternative bidder, is acting in good faith and entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

**D.    Elimination of 10-day Stay.**

23.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property. . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."  Given the need to close the sale as promptly as possible, the Chief Administrator requests that the Breakup Fee and Bid Order and any order ultimately authorizing the consummation of the transaction contemplated by this Motion be effective immediately by providing that the 10-day stay is inapplicable.

**E.    Notice**

24.    In accordance with this Court's Notice, Case Management and Administrative Procedures Order (D.E. No. 72), the Chief Administrator will serve copies of this Motion on (i) all entities on the Master Service List, (ii) any person claiming any Lien on the Assets, and (iii) any other person or entity expressing an interest in purchasing the Assets.

**CONCLUSION**

For the foregoing reasons, the Chief Administrator requests that the Court (i) enter an order in the form attached as Exhibit A (a) approving and authorizing the sale of the Lake Lanier Assets subject to higher or better bids, (b) approving bid

procedures (including notice and auction procedures), overbid protection and a breakup fee for Kolter, and (c) scheduling a post-auction hearing to approve the sale of the Lake Lanier Assets to the highest or best bidder, (ii) enter an order substantially in the form attached as Exhibit B finally approving the sale to Kolter or the entity that submitted the highest or best offer for the Lake Lanier Assets, free and clear of all Liens, other than Permitted Liens, and (iii) granting such other and further relief as the Court deems appropriate.

SMITH HULSEY & BUSEY

By____/s/*Cynthia C. Jackson*_____
    Cynthia C. Jackson

Florida Bar No. 498882
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)

Counsel for Chief Administrator

00676908

**Exhibit A**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION

In re:                                        )
                                              )   Chapter  11
LEVITT AND SONS, LLC,                         )
a Florida limited liability company, *et al.*,    )   Case Number:  07-19845-BKC-RBR
                                              )
            Debtors.                          )   Jointly Administered
_____             )

## BREAKUP FEE AND BID ORDER FOR THE SALE OF
## <u>ASSETS OF LEVITT AND SONS OF HALL COUNTY, LLC</u>

This matter is before the Court on the motion of Soneet Kapila, as Chief

Administrator for Levitt and Sons of Horry County, LLC, Levitt and Sons of Hall

County, LLC, Levitt and Sons of Cherokee County, LLC, Levitt and Sons of

Paulding County, LLC, Levitt and Sons at World Golf Village, LLC and Levitt

and Sons of Manatee County, LLC (collectively, the "Post Confirmation

Wachovia Debtors"), for an order under 11 U.S.C. §§ 105(a) and 363 of Title 11

of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), and

Fed. R. Bankr. P. 6004 (i) approving the sale of assets to Kolter Group, LLC

("Kolter") or another successful bidder at auction, free and clear of liens, claims, interests, and encumbrances and (ii) approving bid procedures (including notice and auction procedures), overbid protection and a breakup fee (D.E. No. ____) (the "Sale Motion").  Having reviewed the Sale Motion, the record, and the statements of counsel for the Seller and the Purchaser (defined below), the Court finds that establishing procedures for a sale of the Property, as defined in the Sale Motion, in accordance with the provisions contained in this Order, is in the best interests of the Debtor's estate.  The Chief Administrator has given proper and adequate notice of the Sale Motion and the hearing, and no other or further notice is necessary.  Accordingly, it is

   **ORDERED and ADJUDGED:**

   1. *Approval of Purchase Agreement; Approval of Breakup Fee.* The Purchase Agreement[1] with Kolter Group, LLC (the "Purchaser") for a purchase price of $12,400,000 is approved, subject to (i) any higher or better bids, (ii) any objections at the final hearing to approve the sale and (iii) the authority of the Chief Administrator to reject any and all offers, including the offer represented by the Purchase Agreement.  The breakup fee in the amount of $320,000 (the "Breakup Fee") and the overbid protection in the amount of $500,000 (the "Overbid Protection") are approved, subject to the terms and conditions of this Order.

---

[1] Capitalized terms not defined in this Order shall have the meaning ascribed to them in the Sale Motion.

2.    *Bidding Procedures.*    The "Bid Procedures for the Sale of Certain Assets of Levitt and Sons of Hall County, LLC" is attached as Exhibit A to this Order and is approved and shall control to the extent of any conflict with the language of this Order.  An auction will be conducted on the following terms and conditions:

A.    *Determination of "Qualified Bidder" Status.*    Prior to submitting a bid with respect to the Lake Lanier Assets, any party, other than Kolter and Wachovia Bank, National Association ("Wachovia"), will be required to deliver to the Chief Administrator (i) an executed confidentiality agreement in a form reasonably acceptable to the Chief Administrator and (ii) evidence acceptable to the Chief Administrator establishing the potential bidder's ability to finance and close the potential purchase.  A "Qualified Bidder" is a potential bidder (i) that timely delivers such documents and (ii) that the Chief Administrator determines is financially able to consummate the purchase of the Lake Lanier Assets.  The Chief Administrator reserves the right to make the sole and final determination of who is a Qualified Bidder.  Kolter and Wachovia are each deemed to be a Qualified Bidder.  All Lake Lanier Assets must be sold for cash, other than a credit bid from Wachovia.

B.    *Determination of "Qualified Bid" Status.*    In the event a Qualified Bidder desires to propose a purchase of the Lake Lanier Assets, such Qualified Bidder must submit the following required bid documents in order for the bid to be considered a "Qualified Bid": (i) a written offer (A) stating that the

Qualified Bidder unconditionally offers to purchase the Lake Lanier Assets for cash of no less than $12,900,000 (other than a credit bid from Wachovia), without any further due diligence or financing or other contingencies, and that the offer is irrevocable until the closing of the purchase of the Lake Lanier Assets, and (B) an executed purchase agreement that substantially conforms to the Purchase Agreement and that in all events includes covenants substantially similar to the covenants contained in Article III of the Purchase Agreement, accompanied by a copy of such agreement that is marked to show such Qualified Bidder's proposed revisions, amendments or modifications (if any) to the Purchase Agreement; and (ii) a good faith deposit (the "Good Faith Deposit") in an amount equal to at least ten percent (10%) of the Qualified Bid (except that no cash deposit shall be required of Wachovia) paid by certified check or wire transfer (or other payment form acceptable to the Chief Administrator in his sole discretion) payable to the order of Chief Administrator, c/o Smith Hulsey & Busey, and to be held in trust by the Chief Administrator.

        C.    *Submitting a Bid*.  Bid documents must be submitted by _____, 2009 (thirty (30) days after entry of an Order approving the Bid Procedures) (prevailing Eastern time) (the "Bid Deadline") to (i) the Post-Confirmation Wachovia Debtors c/o Soneet R. Kapila, 1000 South Federal Highway, Suite 200, Ft. Lauderdale, FL 33316, e-mail: skapila@kapilaco.com, (ii) Smith Hulsey & Busey, Attn: Andrew Keith Daw, 225 Water Street, Suite 1800, Jacksonville, FL 32202, e-mail: kdaw@smithhulsey.com, (iii) Alvarez & Marsal

Real Estate Advisory Services, LLC, Attn: Bruce Gamble, 3399 Peachtree Road, Suite 1900, Atlanta, GA 30326, e-mail: bgamble@alvarezandmarsal.com, and (iv) Burr & Forman, Attn: Jason Woodard, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, e-mail: jwoodard@burr.com.  Upon receipt of a Qualified Bid, the Lake Lanier Debtor shall promptly file a copy of such bid with the Bankruptcy Court and will provide a copy to Kolter and its counsel by electronic mail to msours@mmmlaw.com.

        D.    *Auction*.  If one or more Qualified Bids (other than that of Kolter) are timely received, the Chief Administrator will conduct an auction (the "Auction") with respect to the Lake Lanier Assets.  If no Qualified Bid (other than that of Kolter) is timely received by the Bid Deadline, no auction will be held, the Chief Administrator will report the same to the Bankruptcy Court, Kolter's bid will be deemed the highest or otherwise best offer for the Lake Lanier Assets, and the Chief Administrator shall proceed with the transaction contemplated by the Purchase Agreement.  All of the foregoing is subject to the authority of the Chief Administrator to reject any and all bids, including the bid reflected by the Purchase Agreement.

        E.    *Auction Date.*  The Auction, if required, will occur at the offices of Kapila & Company, 1000 S. Federal Highway, Suite 200, Ft. Lauderdale, FL 33316-1237, commencing at 9:00 a.m. (prevailing Eastern time) on _____, 2009 (within five (5) days of the Bid Deadline).

F.    *Opening Bid Requirement*.    The Auction will be conducted as an "open cry" auction.  Bidding will begin at the purchase price stated in the highest or otherwise best Qualified Bid.   Bidding will subsequently continue in additional minimum increments of at least Ten Thousand and NO/100 Dollars ($10,000.00) in cash (other than Wachovia which may credit bid).

G.    *Title to Subject Property*.    All of the Lake Lanier Debtor's rights, title, and interest in and to the Lake Lanier Assets are sold and assigned free and clear of all liens, claims, taxes, security interests, rights of possession, encumbrances, and other interests, whether or not of record, other than Permitted Liens.  The purchaser of the Lake Lanier Assets will not be bound by, inherit or succeed to in any way to any of the obligations of the Post Confirmation Wachovia Debtors or their affiliates or any other prior owner of the Lake Lanier Assets, including, without limitation, any successor liability of any type whatsoever, other than as set forth in the Purchase Agreement.

H.    *Bankruptcy Approval after Notice and Hearing*.    The Court will conduct a hearing on the sale to Kolter or the Qualified Bidder that makes the Prevailing Bid commencing at _____ (a.m./p.m.) on _____, 2009, at the United States Bankruptcy Court, 299 E. Broward Blvd., Room 308, Fort Lauderdale, Florida 33301 (the "Sale Hearing").

i.    *Sale Order.*    At the Sale Hearing, subject to the authority of the Chief Administrator to reject any and all bids, including the bid reflected by the Purchase Agreement, the Chief Administrator will seek entry of

6

an order authorizing and approving the Sale (a) to Kolter pursuant to the terms and conditions set forth in the Purchase Agreement so long as no other Qualified Bid is received, or (b) if another Qualified Bid or Bids (that are the Prevailing Bid(s) are received, then to such other Qualified Bidder(s) that the Chief Administrator, in the exercise of his business judgment at or timely following the Auction, determines has made the highest or otherwise best offer to purchase the Lake Lanier Assets at the Auction (the "Prevailing Bidder").  After considering the Auction Qualified Bids, the Chief Administrator will notify the Qualified Bidders (including Kolter) and Wachovia of the results of such determination and will present the Prevailing Bid to the Bankruptcy Court at the Sale Hearing.  If the Chief Administrator rejects any and all bids, including the bid reflected by the Purchase Agreement, the Chief Administrator shall file notice of such rejection with the Bankruptcy Court no later than the day before the date on which the Sale Hearing was scheduled to occur.

        ii.   *Back Up Bidder.*  Following the Sale Hearing approving the sale of the Lake Lanier Assets to the Prevailing Bidder, if the Prevailing Bidder fails to consummate an approved Sale within five (5) business days of the required closing date because of a breach or failure to perform on the part of the Prevailing Bidder, the next highest or otherwise best Qualified Bid for the Lake Lanier Assets will be deemed to be the Prevailing Bid, and the Chief Administrator will be authorized to consummate the sale with the applicable Qualified Bidder submitting its bid without further order of the Bankruptcy Court

7

(a "Back Up Bidder"). The closing of the Sale to a Backup Bidder shall take place within thirty (30) days after the Back Up Bidder receives notice from the Chief Administrator that the Prevailing Bidder failed to close.

iii.    *Return of Good Faith Deposit.*    The Good Faith Deposit (or the allocable portion thereof) of any Qualified Bidder will be returned to the Qualified Bidder within five (5) business days after the day on which the Prevailing Bidder is chosen, except for the Prevailing Bidder and the Back Up Bidder, whose deposits shall be retained until five (5) business days after the closing of the Sale, and the Back Up Bidder will remain obligated to purchase all of the Lake Lanier Assets in accordance with such bids until the consummation of the Sale to the Prevailing Bidder.  If a Prevailing Bidder fails to consummate an approved Sale, and pursuant to the Purchase Agreement with the Prevailing Bidder, the Chief Administrator has the right to retain the Good Faith Deposit deposited by the Prevailing Bidder as a result of such failure, the Chief Administrator will not have any obligation to return the Good Faith Deposit deposited by the Prevailing Bidder, and such Good Faith Deposit irrevocably will become property of the Post-Confirmation Wachovia Debtors as pre-agreed upon liquidated damages to the Post-Confirmation Wachovia Debtors, and not as a penalty to such Prevailing Bidder.  The foregoing sentence shall also apply to any Back Up Bidder(s) should such Back Up Bidder(s) become obligated to consummate a sale.

I.     *Bid Protection; Breakup Fee*.  As set forth more fully in Sections 6.2 and 8.1 of the Purchase Agreement, provided (a) that Kolter is not in default under the Purchase Agreement beyond any applicable notice and cure periods set forth in the Purchase Agreement or has not terminated the Purchase Agreement, and (b) that the Court confirms and approves a sale of the Lake Lanier Assets to a Qualified Bidder other than Kolter, then the Chief Administrator shall be permitted, authorized, and directed to pay Kolter a Breakup Fee in the amount of $320,000 from sale proceeds.  If the Chief Administrator decides to reject all bids for the Lake Lanier Assets (including the bid reflected by the Purchase Agreement) or fails to close the sale to Kolter pursuant to the terms of the Purchase Agreement and the order of this Court, then, pursuant to Sectio 8.1 of the Purchase Agreement, the Chief Administrator shall pay the Breakup Fee to Kolter from the funds of the Lake Lanier Debtor and shall be authorized, permitted, and directed to pay from such funds.

J.     *Closing of the Sale*.  If an order approving the sale of the Lake Lanier Assets is not subject to a stay, the closing of the sale and transfer of the Lake Lanier Assets (the "Closing") will occur within ten (10) business days after the satisfaction or waiver of the conditions set forth in Section 7.3 of the Purchase Agreement (other than conditions that by their nature are to be satisfied at the Closing).

K.    All sales proceeds (other than any applicable closing costs and any Breakup Fee) will be paid at closing to Wachovia to be applied in accordance with this Court's DIP Order (D.E. No. 1366).

L.    The ten day stay contained in Rule 6004(h) is waived and rendered inapplicable to this Bid Procedures Order.

### 

**Submitted by:**
Cynthia C. Jackson
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202

**Copies furnished to:**
Cynthia C. Jackson, who shall serve a copy of this order on all interested parties and file a certificate of service.

00677233

**Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter  11 |
| | ) | |
| LEVITT AND SONS, LLC, | ) | |
| a Florida limited liability company, *et al*., | | Case Number:  07-19845-BKC-RBR |
| | ) | |
| Debtors. | | Jointly Administered |
| _____ | ) | |

**ORDER APPROVING SALE OF LAKE LANIER ASSETS**
**FREE AND CLEAR OF LIENS**

This matter is before the Court on the motion of Soneet Kapila, as Chief Administrator for Levitt and Sons of Horry County, LLC, Levitt and Sons of Hall County, LLC, Levitt and Sons of Cherokee County, LLC, Levitt and Sons of Paulding County, LLC, Levitt and Sons at World Golf Village, LLC and Levitt and Sons of Manatee County, LLC (collectively, the "Post Confirmation Wachovia Debtors"), for an order under 11 U.S.C. §§ 105(a) and 363 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") and Fed. R. Bankr. P. 6004 (i) approving the sale of assets to Kolter Group, LLC ("Kolter") or another successful bidder at auction, free and clear of liens, claims, interests, and encumbrances and (ii)

approving bid procedures (including notice and auction procedures), overbid protection and a breakup fee (D.E. No. _____) (the "Sale Motion"). The Court held a hearing on the Sale Motion on _____, 2009 to conditionally approve the sale and to approve the bid procedures, including an overbid protection and breakup fee. By order dated _____ the Court approved the bid procedures (D.E. No. __) (the "Breakup Fee and Bid Order"). On _____, the Court held a further hearing to approve the sale of the Lake Lanier Assets pursuant to the Sale Motion. The Court has reviewed the Sale Motion, considered the evidence and heard argument of counsel. After due deliberation and good and sufficient cause existing, the Court makes the following findings of fact:

A. This Court has jurisdiction over the Sale Motion and the transactions contemplated by the Sale Motion pursuant to Section 11.1(d) of the Second Amended Joint Liquidating Chapter 11 Plan for Debtors, as Amended (D.E. No. 411E) (the "Plan"), which was confirmed by order of the Court dated February 20, 2009 (D.E. No. 464E) (the "Confirming Order"). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

B. The Chief Administrator solicited the highest or otherwise best offer for the Lake Lanier Assets[1] in accordance with bid procedures approved by the Breakup Fee and Bid Order. **Alternatives, depending on circumstance:** [A competing bid was received for the Lake Lanier Assets and the Chief Administrator

---

[1] All capitalized terms not otherwise defined in this Order have the same meaning provided to them in the Sale Motion.

2

conducted an auction for the Lake Lanier Assets on _____ (the "Auction").  At the Auction, _____ submitted the final bid of _____ (the "Successful Bidder"), representing the highest or otherwise best offer received for the Lake Lanier Assets.] **or** [No competing bid was received for the Lake Lanier Assets and the Chief Administrator believes the Purchase Price to be paid by Kolter as provided in the Purchase Agreement, which was attached to the Sale Motion, represents the highest or otherwise best offer for the Lake Lanier Assets].

C.    The Chief Administrator has provided interested parties (including all parties asserting claims or interests in the Lake Lanier Assets, if any) with proper notice of the Sale Motion, the Sale Hearing, the Auction, in accordance with 11 U.S.C. §§ 102(1), 105(a), 363 and Fed. R. Bankr. P. 2002(a) and 6004(a), the Notice, Case Management and Administrative Procedures Order (D.E. No. 72) and the Breakup Fee and Bid Order.  This notice is due, proper and sufficient notice to provide affected parties adequate opportunity to determine that their rights are to be affected and afforded such parties an opportunity to object to the sale of the Lake Lanier Assets at the Sale Hearing.

D.    The Chief Administrator conducted the sale process in compliance with the Breakup Fee and Bid Order, the Bankruptcy Code and all other orders entered in these cases.  **Alternatives depending on the circumstance:** [Bidding on the Lake Lanier Assets and the Auction were conducted in a non-collusive, fair and good faith manner.] **or** [The Chief Administrator did not receive any bids for the Lake Lanier Assets, and the Auction was cancelled.]   The Chief

Administrator has given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Lake Lanier Assets.  In its sound business judgment, the Chief Administrator has determined on behalf of the Post Confirmation Wachovia Debtors that: **alternatives depending on the circumstance:** [the Purchase Price provided in the Purchase Agreement attached to the Sale Motion was the highest or otherwise best offer] **or** [the bid submitted by the Successful Bidder (the "Purchaser") at the Auction represented the highest or otherwise best offer] for the Lake Lanier Assets.

E.    The Chief Administrator (i) has full corporate power and authority to execute and consummate the Purchase Agreement attached as Exhibit A on behalf of the Lake Lanier Debtor, and all related documents, and the sale of the Lake Lanier Assets has been duly and validly authorized by all necessary corporate action of the Post Confirmation Wachovia Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

F.    Pursuant to paragraph 8 of the Confirmation Order (D.E. No. 4646), the Chief Administrator has the ability to convey the Lake Lanier Assets on behalf of the Lake Lanier Debtor to the Purchaser on the terms and conditions of this Order and the Purchase Agreement.

G.    The Post Confirmation Wachovia Debtors have good business reasons to sell the Lake Lanier Assets.

H.      Neither the Purchaser nor any of its affiliates is an "insider" of any of the Post Confirmation Wachovia Debtors, as that term is defined in 11 U.S.C. § 101.

I.       The Chief Administrator and the Purchaser proposed, negotiated and entered into the Purchase Agreement without collusion, in good faith and at arms'-length bargaining positions.  The Post Confirmation Wachovia Debtors, the Chief Administrator, and the Purchaser have not engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

J.      The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to the protections afforded by that section.

K.      The consideration the Purchaser will give the Chief Administrator for the Lake Lanier Assets pursuant to the Purchase Agreement (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Lake Lanier Assets; and (iii) constitutes reasonably equivalent value.

L.      The transfer of the Lake Lanier Assets to the Purchaser pursuant to the Purchase Agreement will be a legal, valid, and effective transfer of the Lake Lanier Assets.  The transfer of the Lake Lanier Assets to the Purchaser indefeasibly will vest the Purchaser with good and valid title in and to the Lake Lanier Assets free and clear of any Claims (as defined below).  Any Claim in or against the Post Confirmation Wachovia Debtors, their insiders, or the Lake Lanier Assets will attach to the net proceeds of the sale with the same effect, validity, enforceability and priority of such Claims, if any, as such Claims had against the Lake Lanier Assets prior to the

5

sale contemplated hereby, subject to any rights, claims, defenses and objections of the Lake Lanier Debtor and all interested parties with respect to such Claims.

M.    The sale and transfer of the Lake Lanier Assets in accordance with the terms and conditions of the Purchase Agreement will be free and clear of all Claims.

N.    The Chief Administrator will cause the net proceeds from the sale to be paid to Wachovia in accordance with the DIP Order (D.E. No. 1366) and the Confirming Order.

O.    Except as expressly set forth in the Purchase Agreement, the Purchaser will have no responsibility for any liability, claim or other obligation of or against Post Confirmation Wachovia Debtors related to the Lake Lanier Assets by virtue of the transfer of the Lake Lanier Assets.  The Purchaser will not be deemed, as a result of any action taken in connection with the purchase of the Lake Lanier Assets, (i) to be a successor to the Lake Lanier Debtor or (ii) to have, *de facto* or otherwise, merged with or into the Lake Lanier Debtor.  The Purchaser does not acquire or assume any liability, warranty, or other obligation of the Lake Lanier Debtor, except as expressly set forth in the Purchase Agreement.

P.    A sale on the terms and conditions of the Purchase Agreement, including without limitation, entry of an order providing a sale free and clear of Claims and providing that the Purchaser is not a successor of the Lake Lanier Debtor, is consistent with the Bankruptcy Code and promotes the policies of the Bankruptcy

Code to maximize value.  Absent such finding, the Purchaser would be unwilling to pay the price for the Lake Lanier Assets as provided for in the Purchase Agreement.

Q.    The Court's approval of the Purchase Agreement is in the best interests of the Post Confirmation Wachovia Debtors, their estates and their creditors. Accordingly, it is

**ORDERED AND ADJUDGED THAT:**

1.    The Sale Motion is granted.

2.    All objections to the entry of this order or to the relief granted and requested in the Sale Motion that have not been withdrawn, waived or settled at or before the Sale Hearing are denied and overruled on the merits.

3.    The Purchase Agreement is approved in all respects.  Pursuant to 11 U.S.C. §§ 105(a), 363(b), the Confirmation Order and the Plan, the Chief Administrator is authorized and directed (subject to applicable Closing conditions set forth in the Purchase Agreement) to consummate the sale approved by this Order on behalf of the Lake Lanier Debtor, including transferring and conveying the Lake Lanier Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Purchase Agreement.

4.    Pursuant to 11 U.S.C. § 363(b), the Chief Administrator is authorized, directed and empowered to consummate and implement fully the Purchase Agreement on behalf of the Lake Lanier Debtor, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement.  The Chief Administrator is authorized and directed to take all actions

7

necessary for the purpose of assigning, transferring, granting, conveying, and conferring the Lake Lanier Assets to the Purchaser.

5.    Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the Purchase Agreement without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Post Confirmation Wachovia Debtors' estates.

6.    The Lake Lanier Assets will be transferred to the Purchaser upon Closing of the sale free and clear of all Claims pursuant to 11 U.S.C. §§ 105(a) and 363(f).

7.    The Chief Administrator will cause the proceeds from the sale to be paid to Wachovia.

8.    The Purchaser will provide the Lake Lanier Debtor with reasonably equivalent value and fair consideration for the Lake Lanier Assets under the Bankruptcy Code and applicable non-bankruptcy law.  For that reason, the transfer may not be avoided under 11 U.S.C. § 363(n).

9.    All entities that are presently, or upon Closing may be, in possession of some or all of the Lake Lanier Assets are directed to surrender possession of such Lake Lanier Assets to the Chief Administrator.  Prior to or upon the Closing, the Chief Administrator is authorized and directed to execute such documents and take all other actions as may be necessary on behalf of the Lake Lanier Debtor to

8

release its Claims in the Lake Lanier Assets, if any.  In the event any creditor fails to release its Claims in the Lake Lanier Assets, the Chief Administrator and the Purchaser are each authorized to take any action necessary to do so including, executing and filing any statements, instruments, releases and other documents on such creditor's behalf.  The Purchaser also is authorized to file, register or otherwise record a certified copy of this Order.  Once this Order is so filed, registered or otherwise recorded, the Order constitutes conclusive evidence of the release of all Claims against the Lake Lanier Assets as of the Closing.

> 10.    The Purchaser has and will have acted in good faith in purchasing the Lake Lanier Assets under Purchase Agreement as that term is used in 11 U.S.C § 363(m).  For that reason, any reversal or modification of the Order on appeal will not affect the validity of the sale to the Purchaser, unless this Order is duly stayed pending such appeal.

> 11.    The transfer of the Lake Lanier Assets to the Purchaser will not result in (a) the Purchaser having any liability for any Claim against the Lake Lanier Debtor or against any insider of the Lake Lanier Debtor or (b) the Purchaser having any liability to the Lake Lanier Debtor except as expressly stated in the Purchase Agreement and this Order.

> 12.    The Purchaser (and its affiliates, successors or assigns) will have no responsibility for any liability of the Lake Lanier Debtor arising under or related to the Lake Lanier Assets.

13.   The transfer of the Lake Lanier Assets to the Purchaser on the Closing Date shall be free and clear of any and all liens, encumbrances, claims, charges, defenses, off-sets, recoupments and interests thereon of whatever type or description, including, without limitation, restrictions on or conditions to transfer or assignment, liens, mortgages, security interests, pledges, hypothecations, control agreements, equities and other claims and interests (all such claims and interests described in this paragraph being referred to in this Order as the "Claim" or "Claims"), having arisen, existed or accrued prior to and through the Closing Date (as defined in the Purchase Agreement), whether direct or indirect, monetary or non-monetary, arising at law or in equity, contract or tort, absolute or contingent, matured or unmatured, voluntary or involuntary, liquidated or unliquidated, of, by or against the Post Confirmation Wachovia Debtors, insiders of the Post Confirmation Wachovia Debtors or the Lake Lanier Assets and further including, without limitation, the following:

    a.    Claims arising through the Closing Date, if any, of any governmental unit for taxes; any Claim arising through the Closing Date relating to any executory contract or lease (whether of personal or real property, or otherwise) affecting or in any way related to the Lake Lanier Assets, without limitation, Claims of the Lake Lanier Debtor's vendors, suppliers and/or customers arising from the Lake Lanier Debtor's failure to perform its obligations to said parties whether such failure occurred prior to or on the Closing Date or whether such failure arose as a result of the Purchaser's election on or before the Closing Date not to accept and/or perform such vendors', suppliers' or customers' account and/or orders subsequent to the Closing Date;

    b.    Any Claim arising through the Closing Date relating to work performed by any contractor or materialman that would give rise to a mechanic's lien, or similar Claim, against the Lake Lanier Assets;

c. Any Claim arising through the Closing Date for attorney's fees or other costs or expenses claimed by lessors, lessees, licensees or any other non-debtor parties to executory contracts or any lease;

d. Any Claim arising through the Closing Date based on acts or omissions of the Lake Lanier Debtor arising in tort, contract or otherwise, including, without limitation, Claims for successor liability; and

e. Any claim by any person or entity relating to any health or welfare benefit for the benefit of any current or former employee of the Lake Lanier Debtor or such dependents or beneficiaries.

Provided, however, notwithstanding any provision of this Order or any other order, instrument or document to the contrary, the terms "Claim" and "Claims" shall not mean or include any Permitted Liens, as defined in Article I of the Purchase Agreement.

In addition, the Purchaser and its affiliates, successors or assigns or their respective properties (including the Lake Lanier Assets) shall not be liable, by operation of law or otherwise, for any Claim by virtue of the Purchaser's purchase or subsequent operation of the Lake Lanier Assets including, without limitation, claims of the type set forth in subparagraphs (a)-(e) hereinabove.

14. The purchase of the Lake Lanier Assets by the Purchaser shall not cause the Purchaser or its affiliates, successors or assigns or their respective properties (including the Lake Lanier Assets) to be deemed a successor in any respect of the Lake Lanier Debtor's business within the meaning of any laws, rules or regulations relating to any tax, revenue, pension, benefit, ERISA, environmental, labor, employment,

products liability or other law, rule or regulation of any federal, state or local government.

15.    Upon Closing, this Order constitutes a full and complete general assignment, conveyance and transfer of the Lake Lanier Assets and/or a deed or a bill of sale transferring good and marketable title in the Lake Lanier Assets to the Purchaser on the Closing Date free and clear of all Claims.  Each and every federal, state, and local governmental agency or department is directed to accept this Order as such an assignment, deed and/or bill of sale or any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.  If necessary, this Order shall be accepted for recordation on or after the Closing Date as conclusive evidence of the free and clear, unencumbered transfer of title to the Lake Lanier Assets to the Purchaser (except with respect to the Permitted Liens).

16.    This Order is effective as a determination that any and all Claims, if any, will be, and are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Lake Lanier Assets.

17.    The transfer of the Lake Lanier Assets is a transfer pursuant to section 1146(a) of the Bankruptcy Code and accordingly shall not be taxed under any law imposing a stamp tax or a sale, transfer, or any other similar tax.  Each and every federal, state and local government agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transfer of any of the Lake Lanier Assets, all without imposition or payment of any

stamp tax, transfer tax, or similar tax. This Order is binding upon all entities that may be required to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to any of the Lake Lanier Assets.

18.    This Court retains exclusive jurisdiction to (a) enforce and implement the Purchase Agreement and any other agreements and instruments executed in connection with the Purchase Agreement, (b) compel delivery of possession of the Lake Lanier Assets to the Purchaser, (c) resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement, and (d) interpret, implement and enforce the provisions of this Order.

19.    The terms and provisions of the Purchase Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Lake Lanier Debtor, its estate, the Purchaser and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

20.    All persons who hold Claims against the Lake Lanier Debtor, insiders of the Lake Lanier Debtor, or the Lake Lanier Assets are forever estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the sale.

21.    After the Closing Date, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Lake Lanier Assets, or (b) collect or attempt to collect from the Purchaser, or any of its affiliates, any tax (or other amount alleged to be owing by the Lake Lanier Debtor) (i) on account of or relating to any Claims or (ii) for any period commencing before and concluding prior to or on the Closing Date or any pre-Closing portion of any period commencing before the Closing Date and concluding after the Closing, or (iii) assessed prior to and payable after the Closing Date, except as otherwise provided in the Purchase Agreement.  No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the Purchase Agreement.

22.    To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement and this Order, the provisions contained in the Purchase Agreement will control.

23.    Notwithstanding Fed. R. Bankr. P. 6004(h) and 6006(d), this Order will take effect immediately upon entry.

24.    To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

### 

14

**Submitted by:**
Cynthia C. Jackson
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202

**Copies furnished to:**
Cynthia C. Jackson, who shall serve a copy of this order on all interested parties and file a certificate of service.

00677534