[TAGGED]



**ORDERED in the Southern District of Florida on July 30, 2012.**

Raymond B. Ray, Judge
United States Bankruptcy Court

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

LEVITT AND SONS, LLC,
a Florida limited liability company, et al.

    Debtors
_____/

Case No.: 07-19845-RBR
(Jointly Administered)

Chapter 11

**ORDER GRANTING WOODBRIDGE HOLDINGS, LLC'S
MOTION TO ENFORCE PERMANENT INJUNCTION**

THIS MATTER came before the Court for evidentiary hearing on June 7, 2012

upon the Motion of Woodbridge Holdings, LLC to Enforce Existing Permanent Injunction

1

Against the Restrained Parties Ami Haley and Nancy Wells ("**Motion**") [ECF No. 6006], filed by Woodbridge Holdings, LLC ("**Woodbridge**"), and the Response in opposition to the Motion ("**Response**") [ECF No. 6068] filed by Ami Haley and Nancy Wells ("**Haley and Wells**"). By stipulation, all exhibits offered by both parties were admitted into evidence at the hearing. After the hearing, the Court took the matter under advisement and directed the parties to submit competing orders.

Woodbridge asserts that Haley and Wells are permanently enjoined from prosecuting a negligence claim against Woodbridge recently raised in their State Court Suit by virtue of the third party release and injunction ("**Third Party Release and Injunction**") contained in this Court's Amended Order (I) Confirming Second Amended Joint Liquidating Chapter 11 Plan for the Debtors, and (II) Setting Post-Confirmation Status Conference, dated February 20, 2009, as amended ("**Confirmation Order**") [ECF No. 4646]. Haley and Wells argue that their claims against Woodbridge fall within the exception contained in the Third Party Release and Injunction permitting suits against Woodbridge provided the claim is a "cause of action arising under a written contract executed by and under which any Woodbridge Party is directly liable to a Restrained Party" ("**Exception**"). (June 7, 2012 Hearing Transcript at p. 31 [ECF No. 6092]).

After considering the Motion, Response, exceptionally presented arguments of both attorneys, the evidence submitted, the entire record in these bankruptcy cases, and the competing orders, the Court hereby grants Woodbridge's Motion, enforces the injunction contained in its prior Plan Confirmation Order, and permanently enjoins Haley and Wells from further prosecution of their negligence claim against Woodbridge now

pending in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida under Case No: 07-ca-7830(37) ("**State Court Suit**").

## FACTUAL BACKGROUND

### State Court Suit

Prepetition, Levitt and Sons, LLC ("**LAS**"), *et al.* and its affiliate and subsidiary entities (collectively, "**LAS Debtors**") in these jointly administered bankruptcy cases were primarily engaged in the manufacture and sale of single family homes to consumers. [ECF No. 4118, pp. 20-25]. Woodbridge was the direct parent of LAS and the ultimate parent of all of the LAS Debtors. [ECF No. 4118, p. 12].

Haley entered into a Purchase and Sale Agreement with LAS in 2002 for the construction of a townhome located in the Orlando, Florida area. Allegedly, (a) a "punch list" of construction items was never completed after the townhome was built and conveyed to Haley; (b) after hurricanes struck the area beginning in 2004, required repairs to the townhome were not made; and (c) certain building code violations became evident as repairs were made to the townhome. (*See* Complaint filed in State Court Suit, Woodbridge Ex. 3). Pre-petition in 2007, Haley and Wells filed the State Court Suit against LAS and other LAS Debtors seeking monetary damages for alleged construction defects and failure to properly repair the townhome, and other related losses. Woodbridge was not a named defendant in the State Court Suit until 2012.

### Haley and Wells File Claims

Several months later, on November 9, 2007 the LAS Debtors filed their voluntary chapter 11 bankruptcy petitions in this Court. Haley and Wells were duly scheduled as creditors and filed claims against the LAS Debtors who were the defendants in the State

Court Suit. The claims Haley and Wells filed against the LAS Debtors' bankruptcy estates were based on the same allegations they had asserted in the State Court Suit, including:

> damages to [their] real and personal property, . . . caused by Debtor's failure to complete construction and negligent construction of the [townhome] as well as trespass and fraud arising from Debtor's construction and repair of the residence. . . . The allegations of the creditor are more specifically set forth in the voluminous Complaint filed in the [State Court Suit].

Haley's Claim #2974, Wells' Claim #2975.

## Plan Confirmation Order

On February 20, 2009, this Court entered a Confirmation Order confirming the Joint Chapter 11 Plan ("**Plan**") filed by the LAS Debtors and the Official Committee of Unsecured Creditors for the LAS Debtors' estates ("**Committee**"). [ECF Nos. 4646 and 4116]. A critical component of the Plan was the settlement among the LAS Debtors, the Committee, and Woodbridge ("**Woodbridge Settlement**"). Pursuant the Woodbridge Settlement, Woodbridge paid $12.8 million ("**Woodbridge Settlement Payment**") in full satisfaction of a variety of claims the LAS Debtors' estates held against Woodbridge. The Woodbridge Settlement Payment also included a special $4.5 million payment to be made to the LAS Debtors' general unsecured creditors ("**Release Fund**") who would be deemed to have released Woodbridge from any claim relating to the LAS Debtors or the LAS Debtors' property if they did not "opt out" of the Third Party Release and Injunction. The claims Haley and Wells filed against the LAS Debtors were general unsecured claims which were classified as Class LAS-9A claims and paid pursuant to the Plan. [ECF No. 4118, p. 8].

This Court found that the Plan was largely funded by the Woodbridge Settlement. Confirmation Order at ¶ 16, p. 18. The Woodbridge Settlement was also "[t]he principal means of implementing and funding of the Plan." [ECF No. 4118, p. 8].

The consideration Woodbridge received in exchange for payment of the Release Fund was the Third Party Release and Injunction. The Third Party Release and Injunction enjoined all claimants of the LAS Debtors' estates who elected not to "opt out" of the Third Party Release and Injunction from bringing any claim against Woodbridge for any matter relating to the LAS Debtors, the LAS Debtors' property, or otherwise, as defined in the Confirmation Order. As LAS' parent, Woodbridge was concerned that unsatisfied LAS Debtors' creditors may assert claims against it to recover any unpaid balance on their claims. The total amount of LAS Debtors' general unsecured creditors was estimated to be between $107 million and $334 million. [ECF No. 4118, p. 69].

The LAS Debtors, the Committee, and Woodbridge originally entered into and sought approval of the Woodbridge Settlement by motion pursuant to Federal Rule of Bankruptcy Procedure 9019 prior to the Plan confirmation hearing. However, the Court directed that the Woodbridge Settlement must be included in the Plan so that all creditors would have the right to vote to accept or "opt out" of the Third Party Release and Injunction. [ECF Nos. 2853 and 3257]. The Court found that the "opt out" procedure for creditors was fair and equitable. The overwhelming majority of unsecured creditors voting in Class LAS-9B voted to accept the Plan. *See* Confirmation Order ¶¶ I.B. and M., pp. 3 and 5.

Woodbridge's intent in entering into the Woodbridge Settlement and paying the Release Fund in order to obtain a global resolution of all creditor claims against it was made clear in the Confirmation Order and the Settlement Agreement itself which was attached to the Disclosure Statement for the Plan and served upon all creditors, including Haley and Wells.

> The entry of the Third Party Release and Injunction in favor of Woodbridge as set forth in the Plan and Disclosure Statement for Persons that do not "opt out" is appropriate is integral to the Woodbridge Settlement Agreement and appropriate. As stipulated in the Woodbridge Settlement Agreement, (a) the intent of the Woodbridge Settlement Agreement is to channel all Settlement Causes of Action of the Restrained Parties to the Release Fund; and (b) Woodbridge has agreed to the payment of the Total Settlement Payment, a sum in excess of what it believes it would have paid to settle and resolve the Settlement Causes of Action, including in order to obtain the global relief contemplated to be provided to it by entry of the Third Party Release and Injunction through the Release Fund. *See In re Munford*, 97 F.3d 449 (11th Cir. 1996); *In re Grau*, 267 B.R. 896 (Bankr. S.D. Fla. 2001).

Confirmation Order, ¶ I.DD., p. 9; *see also* Settlement Agreement [ECF No. 4032 at p. 14 and ECF No. 4118, p. 201].

### The AIG Policy and Self-Insured Retention Endorsement

On March 24, 2009, American Home Assurance Company a/k/a AIG sent a letter to Woodbridge stating its position regarding insurance coverage under the Commercial General Liability Policy, No. GL 933-33-92 issued to Woodbridge (the "**AIG Policy**") as it relates to the State Court Action (the "**AIG Position Letter**") [Haley and Wells' Exhibit 1]. According to the AIG Position Letter, any insurance coverage available to pay the State Court Action is subject to a Self-Insured Retention Endorsement of $100,000 per occurrence ("**SIR**") [Haley and Wells Exhibit 2, W-0138].

The AIG Policy produced by Woodbridge in the State Court Action for the period covering Haley and Wells' claims contains an SIR Endorsement. [Haley and Wells

Exhibit 2, W-0136].  The language in the AIG Policy obligates AIG to amounts in excess of the "Retained Limit" and states that AIG will have no increased liability in the event of Woodbridge's non-payment.  AIG's obligations do not attach until Woodbridge has paid the entire amount of the SIR.  [Haley and Wells Exhibit 2, W-0138].

## **Haley and Wells' Claims in LAS Debtors' Bankruptcy Cases**

After entering the Confirmation Order, on April 2, 2009 this Court entered an agreed order resolving the Debtors' objections to Haley and Wells' claims ("**Agreed Claims Order**") [ECF No. 4811], pursuant to which Haley and Wells were each allowed an unsecured claim against the consolidated estate of the LAS Debtors in the amount of $100,000.  The Agreed Claims Order also provided that: (a) "[t]hese claims in the face amount of $100,000 each satisfy in full any obligations the . . . Debtors and the LAS Consolidated Debtor have or may have in respect of any and all self-insured retention (the "SIR") obligations under any applicable insurance policy or policies;" (b) Haley and Wells waived any further claim they had against any of the Debtors or their bankruptcy estates; and (c) stay relief was granted for Haley and Wells to continue prosecuting their State Court Suit against the LAS Debtors as:

> nominal parties only, to the extent that the . . . Debtors have valid and collectible insurance coverage that is applicable to the Claimant's claims through and including entry of a judgment, if any.  If Claimants obtain a judgment against the . . . Debtors, or any one of them, Claimants shall not enforce, or seek to enforce, such judgment against the LAS Consolidated Debtor's consolidated chapter 11 estate, or any successor(s) in interest thereto, but instead be limited solely to the right to seek to collect on such judgment from insurance solely to the extent that the judgment exceeds any applicable SIR on such insurance and only to the extent insurance is available.

Agreed Claims Order, p. 3.[1]

---

[1] Haley and Wells' contention that references in the Agreed Claims Order to "Respondent Debtors" and "LAS Consolidated Debtor" are defined terms that do not include Woodbridge and thus, the Agreed Claims Order and any distributions to Haley and Wells flowing therefrom cannot be interpreted to grant

7

### Haley and Wells Name Woodbridge as a Defendant in State Court Suit

Thereafter, Haley and Wells continued the prosecution of their State Court Suit consistent with the terms of the Agreed Claims Order. However, almost three years later, on February 14, 2012, Haley and Wells filed their Fifth Amended Complaint in the State Court Suit ("**Complaint**") in which Woodbridge was named as a defendant. (Woodbridge Exhibit 3). Woodbridge was not named as a "nominal party" but rather was sued in Count VI of the Complaint for "negligence" in connection with the construction, inspection and repair of the townhome which was allegedly "performed under the supervision of, at the direction of, and with authorization from Woodbridge." (Complaint, ¶¶ 86 and 87, Woodbridge Exhibit 3). Haley and Wells sought monetary damages against Woodbridge for the alleged breach of its duties in respect of repairing the townhome and an alleged "duty to protect the public from negligent construction activities performed by the Levitt defendants and other breaches." (Complaint, ¶¶ 87–96, Woodbridge Exhibit 3). The nucleus of operative facts for the new claim Haley and Wells recently brought against Woodbridge in the State Court Suit is the same as that alleged in the original complaint filed against the LAS Debtors in the State Court Suit and in the claims they filed against the LAS Debtors' bankruptcy estates: *i.e.*, the alleged construction defects in the townhome purchased from the Debtor, LAS.[2]

Woodbridge sought relief in the State Court Action by filing two motions to dismiss the complaint and two motions for summary judgment. The judge in the State

---

relief to Woodbridge, is disingenuous as Woodbridge was not named as a defendant until over two years after entry of the Agreed Claims Order.

[2] Pursuant to the Agreed Claims Order, had Haley and Wells named Woodbridge as a "nominal party" only to the extent of collecting insurance coverage under the AIG Policy, then the result may be different. However Haley and Wells are seeking to hold Woodbridge directly liable for negligence and collect damages.

Court Action declined to enter summary judgment or dismiss Woodbridge as a defendant.

### Stipulations during the June 7, 2012 hearing

At the hearing on the Motion, Haley and Wells stipulated that:

(a) the Third Party Release and Injunction was entered as part of the Confirmation Order;

(b) Woodbridge is the same entity which obtained and is entitled to the benefit of the Third Party Release and Injunction;

(c) Haley and Wells are "Restrained Parties" subject to the provisions of the Third Party Release and Injunction;

(d) Haley and Wells filed claims in the Debtors' bankruptcy cases and participated in the Plan confirmation process;

(e) Haley and Wells did not "opt out" of the Third Party Release and Injunction as permitted in the Plan confirmation process; and

(f) Haley and Wells received their *pro-rata* share of the Woodbridge Settlement Payment distributed to them pursuant to the Plan and Confirmation Order.

(June 7, 2012 Hearing Transcript at pp. 10-12, 30-32 [ECF No. 6092]; *see also* ECF No. 899).

### ANALYSIS

The key provision of the Confirmation Order applicable to the resolution of this matter is the scope of the Third Party Release and Injunction embodied in the term "Settlement Causes of Action." This provision provides:

> "Settlement Causes of Action" shall mean any claim or cause of action in connection with, related to, arising out of or related to any of the Woodbridge Parties involving the Debtors or the Debtors' property, including, but not limited to, any intentional tort, negligence, gross negligence, willful misconduct, intentional misrepresentation, negligent misrepresentation, breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, bad faith, intentional or negligent infliction of mental distress, tortious interference with contractual relations, fraud, deceptive trade practices, libel, slander or conspiracy, and any claims of any creditors of the Debtors against Woodbridge Parties; **provided however, that the Settlement Causes of Action specifically**

**shall not and does not include any claim or cause of action arising under a written contract executed by and under which any Woodbridge Party is directly liable to a Restrained Party.**

Confirmation Order, ¶ 23, p. 22 (emphases added).

Since Haley and Wells do not dispute that Woodbridge is entitled to the benefit of the Third Party Release and Injunction and that they are "Enjoined Parties" thereunder,[3] the Court focuses upon whether such claims fall within the Exception. (June 7, 2012 hearing transcript, p. 31 [ECF No. 6092]).  The Exception relied upon by Haley and Wells appears in bold above.  Haley and Wells maintain that Woodbridge's liability for negligence arises under a written contract in the form of the AIG Policy.  The relevant portion of the AIG Policy provides as follows:

I. INSURING AGREEMENTS

a. We will pay on behalf of the insured those sums in excess of the "Retained Limit" that the Insured becomes legally obligated to pay as damages . . . .

* * *

IV. BANKRUPTCY

Your . . . failure to pay, or refusal to pay the "Retained Limit" will not increase our obligations under the policy.  In the event there is insurance, . . . within the "Retained Limit", you will continue to be responsible for the full amount of the "Retained Limit" before the Limits of Insurance under this policy apply.  In no case will we be required to pay the "Retained Limit" or any portion thereof.  Our obligations will attach only when the entire amount of the "Retained Limit" has been paid and then only in excess of the "Retained Limit" and not in excess of the Limits of Insurance adjusted for any reduction in the aggregate limit of our liability.

---

[3] The State Court Suit asserts barred claims against Woodbridge.  Eliminating its extraneous language, the definition of enjoined and released "Settlement Causes of Action" in the Confirmation Order specifically includes Haley and Wells' claim for "negligence" against Woodbridge in the State Court Suit.  The claims filed by Haley and Wells against the LAS Debtors' bankruptcy estates and allowed by the Agreed Claims Order were based upon the same factual allegations they first asserted against the Debtors in the State Court Suit and have now asserted against Woodbridge – alleged construction defects in the townhome.  Therefore, as stipulated to, Haley and Wells' negligence claim against Woodbridge falls within the definition of "Settlement Causes of Action."

[Haley and Wells Exhibit 2, W-1036, W0138]. Section IV of this policy, they contend, makes Woodbridge directly liable to Haley and Wells to the extent of the SIR ($100,000). Therefore, they contend, their suit against Woodbridge for negligence falls within the Exception.

This Court disagrees. It is undisputed that Haley and Wells are not parties or signatories to the AIG Policy. They are not named as insureds or beneficiaries. Nor are they otherwise named anywhere in the AIG Policy. And there is certainly not policy language making Woodbridge "directly liable" to Haley or Wells.

The strongest language for the argument that Woodbridge is directly liable to Haley and Wells is found in the sentence explaining that AIG's "obligations [over the SIR amount] will attach only when the entire amount of the [SIR] has been paid . . . " by Woodbridge. At best, the language makes Haley and Wells possible third-party beneficiaries of the AIG Policy but certainly does not make Woodbridge "directly liable" to Haley or Wells. The SIR here represents the amount of loss that Woodbridge is responsible for before coverage under the AIG Policy is triggered. *See Vigilant Ins. Co. v. Continental Cas. Co.*, 33 So. 3d 734, 735 n.1 (Fla. 4th DCA 2010). It is not and cannot be interpreted to impose direct liability on Woodbridge.

In any event, Haley and Wells' claim against Woodbridge in the State Court Action is not one based on contract—they have not asserted a claim against Woodbridge for an alleged breach of the AIG Policy. Rather, the claim asserted in the State Court Action is a tort claim for negligence. Accordingly, this Court cannot find that Woodbridge is "directly liable" to Haley and Wells under any written contract executed by Woodbridge which would fall within the Exception.

If the mere existence of an insurance policy allows any LAS Debtors' claimant to sue Woodbridge then this Court's Third Party Release and Injunction is meaningless and Woodbridge paid the Release Fund to such claimants for no consideration. Indeed, the Third Party Release and Injunction was a critical provision of the settlement reached with the LAS Debtors and the Committee. The Eleventh Circuit has observed in *In re Munford*, 97 F.3d 449 (11th Cir. 1996) that "[b]ut for the bankruptcy court's bar order in this case, for example [settler] would not have entered into the settlement agreement with [debtor]." *Id*. at 455. Even this Court has recognized that a bar orders play "an essential and critical element" of a settlement. *Rothstein Rosenfeldt Adler, P.A.*, Case No. 09-34791-RBR, 2010 WL 3743885, at *6 (Bkrtcy. S.D. Fla.).

Without the Third Party Release and Injunction, Woodbridge would not have settled and paid the $12.8 million Settlement Payment. Without the Settlement Payment, there would not have been sufficient funds necessary to confirm the Plan. There would have been no Plan and no Release Fund.[4] And this makes sense. The purpose of the Third Party Release and Injunction was to relieve Woodbridge from defending a multitude of suits by LAS Debtors' claimant homeowners for construction and related defects in exchange for the payment of the Release Fund, which was paid directly to the claimants, including Haley and Wells. The vast majority of "homeowner" unsecured claimants directly benefited from the Woodbridge Settlement and Plan confirmation by receiving their *pro-rata* share of the Release Fund. Therefore, the sole

---

[4] The Court even directed that the entire Woodbridge Settlement be included in the Plan so all unsecured creditors would have the right to vote to accept or "opt out" of the Third Party Release and Injunction. The creditors of the LAS Debtors voted overwhelmingly to confirm the Plan, and likewise, the vast majority elected not to "opt out" of the Third Party Release and Injunction. *See* Transcript of Confirmation Hearing at pp. 62-63 [ECF No. 4661].

12

consideration Woodbridge received in exchange for such payment was entry of the Third Party Release and Injunction and the release by the LAS Debtors.

In conclusion, Haley and Wells have proffered no contract under which Woodbridge is "directly liable" such that their State Court Suit falls within the Exception. Based on the forgoing, it is

**ORDERED** as follows.

The Motion of Woodbridge Holdings, LLC to Enforce Existing Permanent Injunction Against the Restrained Parties Ami Haley and Nancy Wells [ECF No. 6006] is **GRANTED** and the injunction contained in the Third Party Release and Injunction is reaffirmed.  Haley and Wells, and any agent, attorney, or third person working in concert with or for them, in the case styled *Haley and Wells v. Levitt and Sons, LLC, et al*, Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Case No: 07-ca-7830(37) and prosecuting claims defined as "Settlement Causes of Action" in the Confirmation Order's Third Party Release and Injunction without exception are enjoined from further prosecution against Woodbridge.

# # #

Copy furnished to:
HAROLD D. MOOREFIELD, JR., ESQ.
STEARNS WEAVER MILLER WEISSLER
 ALHADEFF & SITTERSON, P.A.
*Counsel for Woodbridge Holdings, LLC*
150 West Flagler Street, Suite 2200
Miami, Florida 33130
hmoorefield@stearnsweaver.com

(*Attorney Moorefield is directed to serve a conformed copy of this Order upon all interested parties, and file a Certificate of Service with the Court*)